631 A.2d 997

STATE OF NEW JERSEY, PLAINTIFF, v.
OSVALDO SANTIAGO, DEFENDANT.

Superior Court of New Jersey
Law Division Passaic County

Decided June 24, 1993.

*George S. Davey,* Assistant Prosecutor, for the State, (*Ronald S. Fava,* Passaic County Prosecutor, attorney).

*Miles R. Feinstein,* for Defendant.

De LUCCIA, J.S.C.

This case raises the question whether a defendant in a criminal trial has been denied rights guaranteed under the Sixth Amendment of the federal Constitution as well as article I, paragraph 10 of the New Jersey Constitution when, due to inadvertence, confidential and privileged communications between defendant and defense counsel are recorded on the court's sound recording system.

This issue developed in the following fashion. On April 28, 1993, the court scheduled a hearing on defendant's motion filed pursuant to *R.* 3:5–7 seeking to suppress certain evidence seized by the Passaic Police Department during a warrantless search. Prior to the commencement of the hearing on the motion, the regularly assigned court reporter was reassigned to another court on an emergent matter. The length of the reporter's absence was uncertain and no replacement was available. The courtroom, however, is equipped with a sound recording system as prescribed by the Administrative Office of the Courts. Immediately after commencement of the motion, but prior to the taking of any testimony, defense counsel queried as to the absence of the court reporter. The court thereupon advised the parties that the proceedings were being recorded electronically. Defense counsel then informed the court that he and defendant had engaged in "privileged" communications at counsel table during which, it is alleged, potentially inculpatory statements were made by defendant to counsel. Defense counsel also advised that he had discussed defense strategy with defendant. These conversations were not conducted in normal conversational tones but rather "sotto voce."

Defense counsel inquired as to whether the court's recording device was of such sensitivity so as to record the conversation between defendant and his attorney. The court inquired of the court clerk, who was operating the system, whether the conversations had actually been recorded. Although the court clerk was not monitoring the conversations at the moment of recording, the clerk advised that conversations had been recorded. This determination was apparently made based upon observations of electronic digital graphs which are part of the recording device.

The court then directed that an experiment be conducted to ascertain the degree of sensitivity of the sound recording system. Defense counsel was requested to converse with the defendant in the same fashion he had prior to his being made aware of the use of the sound recording system. The court clerk determined that, although these conversations were inaudible to the court and persons seated at or near defendant and his attorney, the conversations were nonetheless being recorded and were intelligible.

Defense counsel thereupon objected to the proceedings and moved to dismiss the indictment, alleging that defendant's right to a fair trial and effective assistance of counsel had been incurably compromised. Defense counsel argued that inasmuch as defendant had made inculpatory statements during his private, and presumably privileged, conversations with counsel, which conversations were now recorded as part of the official verbatim record of the court proceedings, the defendant could no longer be "guaranteed" a fair trial. Defendant also argued that notwithstanding the court's order sealing the record, defendant is nonetheless exposed to a "risk" of having his privileged communications revealed to unauthorized persons and, perhaps, impermissibly used against him by the State during his trial.

Although the court afforded the parties an opportunity to brief the issues raised, neither the State nor defendant have availed themselves of that opportunity. The court's research on this issue fails to reveal any precedent. Thus, this appears to be a case of first impression. Therefore, the court's analysis of this question

shall proceed based upon principles of law applicable to situations involving interceptions of such conversations by law enforcement agencies.

■ Defendant claims that the recording of his privileged communications, including potentially inculpatory statements and discussions of defense strategy, have permanently impaired defense counsel's ability to provide constitutionally effective assistance. The privacy and sanctity of the relationship between lawyer and client are well recognized.

> When confronted with the awesome power of the criminal process, a client is never more in need or professional guidance and advocacy. In this setting, an instinct for survival compels the defendant to confide in an attorney. Necessity of full and open disclosure by a defendant ... imbues that disclosure with the intimacy equal to that of the confessional, and approaching even that of the marital bedroom. *Cf. Griswold v. Connecticut*, 381 *U.S.* 479, 484–486, 85 *S.Ct.* 1678, 1681, 1682, 14 *L.Ed.*2d 510 (1965).
>
> [*State v. Sugar*, 84 *N.J.* 1, 12–13, 417 *A.*2d 474 (1980).]

In *Sugar*, defendant was arrested by the Vineland Police Department in connection with his wife's disappearance. During custodial interrogation, defendant requested consultation with an attorney. However, unbeknownst to defendant and his attorney, the police monitored and recorded their conversations. In reviewing defendant's Sixth Amendment claims, the Court observed: "Not every intrusion into the attorney-client relationship results in a denial of the right to effective assistance of counsel. See *Weatherford v. Bursey*, 429 *U.S.* 545, 558, 97 *S.Ct.* 837, 845, 51 *L.Ed.*2d 30 (1977)." *Id.* at 18, 417 *A.*2d 474.

The Court found that the United States Supreme Court requires defendants to demonstrate either a disclosure of defense strategy or an inhibition of free exchange between attorney and client before a Sixth Amendment violation is implicated. *Id.* at 20–21, 417 *A.*2d 474, citing *Weatherford, supra,* 429 *U.S.* at 556, 97 *S.Ct.* at 844, 51 *L.Ed.*2d at 40.

Sugar's conviction of murder in the second degree was ultimately reversed after the Court determined that the police misconduct that occurred during the investigation resulted in a "grave viola-

tion" of defendant's constitutional rights to counsel. *State v. Sugar*, 100 *N.J.* 214, 244, 495 *A.*2d 90 (1985). However, notwithstanding the Court's outrage at this most egregious conduct on the part of law enforcement, the Court still declined to bar further prosecution of defendant. *Id.* at 245, n. 4, 495 *A.*2d 90.

In *United States v. Noriega*, 764 *F.Supp.* 1480 (S.D.Fla.1991), the court declined to dismiss an indictment against former Panamanian head-of-state Manuel Noriega even though prison officials had monitored over 1,000 telephone calls placed by Noriega to his attorney. Some of the attorney-client discussions obtained on the tapes were actually heard by government agents assigned to the prosecution of the case. Noriega was held in the Metropolitan Correctional Center (M.C.C.) in Miami pending trial, and was physically segregated from other inmates. He was not permitted use of the normal telephone banks reserved for the general prison population. A special telephone was installed outside his cell. The Bureau of Prisons maintained a policy of automatically recording all inmate telephone calls with the exception of "properly placed" calls to an attorney. The Bureau of Prisons had in effect an elaborate procedure enabling inmates at the M.C.C. to place unmonitored phone calls to their attorneys. As a consequence of an apparent misunderstanding between Noriega, his attorney and prison officials, all of Noriega's telephone calls were monitored.

Subsequently, the government subpoenaed the tapes from the Bureau of Prisons and embarked upon a review of the telephone conversations. Although procedures were established to insulate government agents directly associated with the prosecution from the tapes, some agents, including a government witness, actually examined tapes or transcripts containing attorney-client conversations.

In denying a motion to dismiss the indictment, the district court noted that "(b)ecause intrusions into the attorney-client relationship are not *per se* unconstitutional, establishing a Sixth Amendment violation requires some showing of prejudice in terms of injury to the defendant or benefit to the State." *Id.* at 1488. The

court observed that before a Sixth Amendment violation is established, it must be determined:

> (1) whether the government's intrusion was intentional; (2) whether the prosecution obtained confidential information pertaining to trial preparation and defense strategy as a result of the intrusion; and (3) whether the information obtained produced, directly or indirectly, any evidence used at trial or was used in some other way to the defendant's substantial detriment.
>
> [*Id.* at 1489 (citations omitted)]

Notwithstanding that several government agents involved in the prosecution were exposed to attorney-client conversations and some conversations were revealed to the media, the court concluded that the government's acquisition of Noriega's privileged conversations was not intentional. The court also found there was no harm to the defendant since only one of the revealed conversations was even remotely prejudicial. *Id.* at 1489.

Although the *Noriega* case is factually distinguishable from the instant matter, it does provide guidance with respect to the disposition of defendant's claims. While the recording of the suppression motion is required under *R.* 1:2–2 in order to provide a verbatim record, the interception of communications between defendant and his attorney was clearly unintentional. All parties, including the court, were unaware such conversations were being recorded. Since the tape has been sealed by court order, no one has actually heard the conversations.

Furthermore, the "interception" was not directly or indirectly the result of State action, at least not in the sense of prosecutorial activities. Recording of court proceedings are performed under the direction of the Administrative Office of the Courts, which agency is within the judiciary. The court is not an adversarial party to these proceedings. The function of trial judges is to remain impartial and detached, not to "take sides." *U.S. v. Five Persons,* 472 *F.Supp.* 64, 68 (D.N.J.1979). "The judiciary serves no representative function whatever: the judge represents no one." *Latin American Citizens Council #4434 v. Clements,* 914 *F.*2d 620, 625 (5th Cir.1990). Thus, defendant has failed to meet the first test needed to establish a Sixth Amend-

ment violation, that is, that the "intrusion" into the attorney-client relationship was an intentional act of the State.

Defendant has failed to meet the other tests as well. Regardless of which conversations between defendant and his attorney were recorded, it remains uncontroverted that none were transmitted to the prosecution. Since the court has sealed the record, there is virtually no possibility that such conversations will intentionally or even inadvertently fall into the hands of the State. The prosecution may obtain neither the tape nor a transcription. Since the tape has not been monitored by anyone, whatever information is contained therein will not be directly or indirectly used against defendant at trial.[1] "A Sixth Amendment violation cannot be established without a showing that there is a 'realistic possibility of injury' to defendant or 'benefit to the State' as a result of the government's intrusion into the attorney-client relationship." *U.S. v. Mastroianni,* 749 *F.*2d 900, 907 (1st Cir.1984) citing *Weatherford, supra,* 429 *U.S.* at 558, 97 *S.Ct.* at 845, 51 *L.Ed.*2d at 41. Defendant has failed to demonstrate any prejudice; neither privileged communications nor confidential information has been obtained by or relayed to the State.

Defendant has also failed to establish that his ability to freely and fully communicate with defense counsel has been seriously impeded, if at all. He has presented mere naked assertions, which are unadorned with facts. While his contentions of constitutional deprivations are sensational, they lack the additional virtue of truth. Therefore, defendant's motion to dismiss Indictment No. 92–12–1440 is denied.

---

[1] Although the court has sealed the tapes, counsel for defendant has been permitted to review the tapes. At this point, that option has yet to be exercised by defense counsel.