46 A.3d 605

STATE OF NEW JERSEY, PLAINTIFF, v. EDWARD RONALD ATES A/K/A RON WAVERLY, DEFENDANT.

Superior Court of New Jersey
Law Division
Bergen County

Decided July 21, 2009.

*William J. Galda,* First Assistant Prosecutor, and *Catherine Foddai,* Assistant Prosecutor for plaintiffs (*John L. Molinelli,* Bergen County Prosecutor, attorney).

*Walter A. Lesnevich* for defendant (*Lesnevich & Marzano–Lesnevich, LLC,* attorneys).

CARROLL, P.J.S.C.

*Facts and Procedural History*

This matter is before the court on defendant's motion to dismiss the indictment. The factual and procedural background which follows is taken from the briefs and attached exhibits submitted by defendant and the State, as well as the testimony and evidence adduced at the evidentiary hearing held in connection with the motion.

On August 23, 2006, police discovered the body of Paul Duncsak at 95 West Crescent Avenue, Ramsey, New Jersey. The cause of death was gunshot wounds from a .22 caliber firearm. Duncsak was the ex-husband of Stacey Walker. Defendant is the father of Stacey Walker and the former father-in-law of Duncsak. Dottie Ates is the wife of defendant and the mother of Walker. Myra Barnes is the mother of defendant.

On September 18, 2006, the Honorable Marilyn C. Clark, P.J.S.C., Passaic County, authorized the electronic interception of cellular telephone and telephone communications between Walker, defendant, Dottie Ates, and other as yet unidentified persons. On September 21, 2006, Judge Clark amended the order of September 18, 2006, to extend the hours of authorized interception. On September 25, 2006, Judge Clark authorized the electronic interception of cellular telephone and electronic communications between Walker, defendant, Dottie Ates, Brenda Ates, Barnes, and other as yet unidentified persons. On October 6, 2006, Judge

Clark authorized an extension of the electronic interception of cellular telephone and telephone communications between Walker, defendant, Dottie Ates, and other as yet unidentified persons. On October 18, 2006, Judge Clark again authorized an extension of the electronic interception of cellular telephone and telephone communications of Walker, defendant, Dottie Ates, Brenda Ates, Barnes and other as yet unidentified persons.

On June 6, 2007, Judge Clark issued complaint warrants against defendant charging him with murder, felony murder, burglary, possession of a weapon for an unlawful purpose and unlawful possession of a weapon. Defendant was thereafter arrested on the charges and a first appearance was held before the Honorable William C. Meehan, P.J.S.C. Bail was originally set at $2,000,000, which was subsequently reduced to $1,000,000 by Judge Meehan at a bail hearing on July 25, 2007. On September 6, 2007, a probable cause hearing was held at which Judge Meehan found that sufficient probable cause was established for the issuance of the subject complaints.

On September 28, 2007, Bergen County Indictment No. 1606–07 was returned, charging defendant with murder, contrary to *N.J.S.A.* 2C:11–3(a)(1)(2) (count 1); felony murder, contrary to *N.J.S.A.* 2C:11–3(a)(3) (count 2); second degree burglary, contrary to *N.J.S.A.* 2C:18–2 (count 3); second degree possession of a weapon, a .22 caliber firearm, for an unlawful purpose, contrary to *N.J.S.A.* 2C:39–4(a) (count 4); third degree possession of a firearm without the requisite permit, contrary to *N.J.S.A.* 2C:39–5(b) (count 5); third degree conspiracy, contrary to *N.J.S.A.* 2C:5–2 (count 6); fourth degree obstructing the administration of law or governmental function, contrary to *N.J.S.A.* 2C:29–1 (count 8), and third degree tampering with witnesses, contrary to *N.J.S.A.* 2C:28–5 (count 9).

On December 10, 2007, defense counsel was provided with eighty compact discs containing the discovery in this matter.

On January 6, 2009, defense counsel wrote a letter to the Honorable Peter Doyne, A.J.S.C., claiming that the State illegally

intercepted and taped conversations between defendant and his attorney. Judge Doyne determined the motion should be heard by the Honorable Donald R. Venezia, J.S.C., unless the parties disagreed. The State objected and argued that the motion should be heard by the Honorable Harry G. Carroll, P.J.S.C. On February 19, 2009, Judge Venezia, after considering the briefs and arguments of counsel, determined that the motion to dismiss the indictment based on prosecutorial misconduct should be heard and decided by Judge Carroll. An order to that effect was filed on February 23, 2009.

The motion to dismiss the indictment now follows.

### Defendant's Argument

Defendant asserts that his right to effective counsel has been compromised, and therefore moves to dismiss the indictment. Defendant alleges that the prosecution illegally intercepted confidential communications that defendant had with his attorney, communications guarded by the Sixth Amendment. Defendant focuses on call # 278 which is alleged to reveal vital strategy that defendant and his attorney planned to use at trial.

In point I of defendant's brief, he asserts that an attorney-client relationship had already been established between defendant and his attorney at the time of the illegal intercept. On August 25, 2006, Walter A. Lesnevich served a Notice of Representation on Officer John Haviland at the Bergen County Prosecutor's Office stating that Lesnevich & Marzano–Lesnevich, LLC represented defendant in all matters relative to the homicide of Duncsak. Therefore, it is defendant's position that the Bergen County Prosecutor's Office had full notice and knowledge that it was illegally intercepting communications between defendant and his counsel in September and October 2006.

In point II, defendant asserts that the illegally intercepted communication was confidential in nature. He claims that in order for the attorney-client privilege to apply, the communication must be such that the client either expressly made confidential or

which he could reasonably assume would be confidential. *See State v. Schubert,* 235 *N.J.Super.* 212, 221, 561 *A.*2d 1186 (App. Div.1989). Defendant claims that he and his counsel were having an in-depth discussion about trial strategy and they would not have had such a discussion in the presence of anyone else. Defendant submits that the phone call should be heard by the court *in camera,* and that the prosecution should not be allowed to hear it. Defendant argues that if the court decides that the opposition has the right to review the phone call, the motion should be turned over to the Attorney General for the State of New Jersey and an Assistant Attorney General having no ties to Bergen County.

In point III, defendant posits that the prosecution did not make an application to Judge Clark for a warrant to intercept communications between defendant and his attorney. He claims that pursuant to *N.J.S.A.* 2A:156A–9 or 10, the prosecution may apply to the court for an order authorizing interception of a wire, electronic or oral communication if the authorization is made in writing upon oath or authorization. If the prosecution seeks the measure of wiretapping confidential communications between defendant and his attorney, the court must be satisfied that there is a "special need" for the interception. *N.J.S.A.* 2A:156A–11. Defendant claims that of the wiretap orders executed by Judge Clark, none of them authorized the prosecution to intercept confidential communications between defendant and his attorney. In fact, defendant contends, the authorizations specifically stated that, "there shall be no interceptions of any conversations of a privileged nature, e.g. lawyer client . . ." Thus, defendant contends that the violation warrants dismissal of the criminal prosecution of defendant. *State v. Sugar,* 84 *N.J.* 1, 22, 417 *A.*2d 474 (1980).

Point IV of defendant's brief contends that the Bergen County Prosecutor's Office performed an illegal intercept that violated defendant's right to effective counsel under the Sixth Amendment of the United States Constitution and Article 1 of the New Jersey State Constitution. Defendant asserts that in *Sugar,* the Supreme

Court stated that if trial strategy was discussed, dismissal of the prosecution would be required. *Sugar, supra,* 84 *N.J.* at 22, 417 *A.*2d 474. Defendant in the instant matter submits that trial strategy was discussed, and thus, the indictment must be dismissed. The issues discussed, defendant argues, included defendant's defenses, which is what the attorney-client privilege protects. Defendant claims that in contrast to *Sugar,* where the intercepted conversations involved only an "awareness of possible defenses," there was a detailed conversation between attorney and client that has put the State on notice of defendant's trial strategy.

The defendant further contends that *Sugar* and the present case are distinguishable with respect to the reaction by the prosecution. In *Sugar,* defendant posits, the authorities acknowledged their wrongdoing and thereafter substituted the investigating team. In the present case, defendant argues that the Bergen County Prosecutor's Office has built a wall around their misconduct and they never disclosed that they recorded this conversation and never provided a written transcription. At the conference before Judge Doyne, prosecutor Molinelli admitted that the prosecution knew that they intercepted and recorded this conversation. Thus, defendant asserts that he has been denied his right to effective assistance of counsel. *See State v. Bellucci,* 81 *N.J.* 531, 537–38, 410 *A.*2d 666 (1980).

In point V, defendant contends that the case against him should be dismissed because the twenty-three additional attorney-client phone calls that were recorded have destroyed the attorney-client relationship. On disc # 69, defendant claims twenty-three calls clearly identify Lesnevich and defendant as the parties speaking. The tapes run for the duration of the call, but nothing can be heard. However, defendant asserts that the interception was not instantly terminated. Defendant claims that attorney trust was thereby compromised because it is unknown what was on the privileged calls that were erased, and it is unknown what trial strategy was disclosed. Attorney and client claim to have no idea what has been heard by the State. Thus, attorney-client trust is

destroyed because of the fear and suspicion defendant has of the State. Defendant claims that this is the situation that the New Jersey Supreme Court in *Sugar* indicated requires a dismissal.

Defendant argues in point VI of his brief that the criminal prosecution should be dismissed even in the absence of demonstrable prejudice to him. Defendant acknowledges that the State may claim that he has suffered no actual prejudice as a result of the illegal interception. However, it is defendant's position that actual prejudice is not required. *See Glasser v. United States,* 315 *U.S.* 60, 76, 62 *S.Ct.* 457, 467, 86 *L.Ed.* 680, 702 (1942). Defendant claims that the Sixth Amendment right to counsel is too fundamental to require a showing of prejudice to sustain a dismissal of the charges.

In point VII, defendant maintains that the proper relief is the dismissal of the criminal prosecution in its entirety. An attempt to isolate the prosecutorial staff from the illegally recorded wiretap is insufficient. Defendant claims that in *Sugar,* the Court held that a dismissal was not warranted because the intercepted conversations did not involve trial strategy, and rather, the Court ordered the exclusion of all evidence and witnesses derived from the illegal intercept. *Sugar, supra,* 84 *N.J.* at 25, 417 *A.*2d 474. The defense submits that *Sugar* cites a number of cases where the prosecution was dismissed because the defendant's trial strategy was disclosed: *United States v. Levy,* 577 *F.*2d 200 (3d Cir.1978); *United States v. Peters,* 468 *F.Supp.* 364 (S.D.Fla.1979); *United States v. Orman,* 417 *F.Supp.* 1126 (D.Colo.1976); *Barber v. Mun. Ct.,* 24 *Cal.*3d 742, 157 *Cal.Rptr.* 658, 598 P.2d 818 (1979); and *State v. Cory,* 62 *Wash.*2d 371, 382 *P.*2d 1019 (1963). In the instant matter, defendant claims that by incorporating these decisions into *Sugar,* the New Jersey Supreme Court necessarily implied that if similar circumstances arose in New Jersey, the prosecution must be dismissed. Defendant goes on to explain how these cases are analogous to the case at bar, thus making a dismissal warranted.

### State's Argument

The State opposes defendant's motion to dismiss the indictment on the grounds that no member of the Bergen County Prosecutor's Office has overheard privileged conversations between defendant and his attorney. The State admits that although a conversation between defendant and his attorney on October 23, 2006 (call # 278) was inadvertently recorded, it was not overheard by the monitoring officer or anyone else in the Prosecutor's Office. Moreover, the twenty-three "additional conversations" were minimized, which the log reports make clear.

The State claims that in *Sugar, supra,* 84 *N.J.* at 6–7, 417 *A.*2d 474, the police intentionally tape-recorded conversations between Sugar and his attorney. It claims that the Supreme Court refused to dismiss the complaint, and rather ordered a hearing to determine whether the State could present untainted evidence and witnesses before the grand jury and at trial. *Id.* at 24–25, 417 *A.*2d 474. The State claims that *Sugar* is inapposite to the present case, since no one in the Bergen County Prosecutor's Office overheard call # 278 and no privileged information was used in its investigation, presented to the grand jury, or will be adduced at trial.

The State further submits that no misconduct was committed by recording twenty-three additional conversations between defendant and his attorney. It argues that in accordance with the New Jersey Wiretapping and Surveillance Control Act, *N.J.S.A.* 2A:156A–1 to 2A: 156A–34 ("Wiretap Act"), the log reports of the twenty-three telephone conversations between defendant and his attorney, which defendant claims were improperly intercepted, show that the calls were minimized as required by the protocol received by the monitors.

Thus, the State submits defendant's motion should be denied.

### Legal Analysis

The State called several witnesses at the evidentiary hearing that was held in connection with defendant's motion. The first

witness called was Detective Russell Christiana, who was originally called to the scene of the Duncsak homicide on August 23, 2006, and was thereafter assigned as case detective. In connection with those duties, he and other members of the Bergen County Prosecutors Office applied for, and were granted, authorization to conduct electronic interception of certain designated telephone communications pursuant to the Wiretap Act. Copies of the various wiretap orders issued by Judge Clark were marked in evidence at the hearing. Also marked in evidence at the hearing were copies of certain memoranda issued by Assistant Prosecutor James Santulli regarding minimization procedures which were to be "strictly adhered to by all monitors," along with a copy of the New Jersey Supreme Court opinion in *State v. Catania*, 85 *N.J.* 418, 427 *A.*2d 537 (1981), which all personnel assigned to monitor conversations were required to acknowledge and sign.

Christiana testified on cross-examination that he had located defendant within a few days of the murder and had an interest in him in connection with the investigation. Christiana further testified, and this court so finds, that by October 23, 2006, the date when the privileged call was intercepted, that defendant had become a suspect in the murder investigation. This court also finds, based on the testimony of several of the State's witnesses, that well prior to that date Lesnevich had notified the Bergen County Prosecutor's Office that he was representing defendant in this matter. This court also finds that the Bergen County Prosecutor's Office was aware of this legal representation and had in fact posted the telephone number for Lesnevich's law office in the room where the wiretap operation was being conducted so that any attorney/client conversations would be minimized.

Sergeant Eladio Cruz was called by the State to explain the technical operations system of the wiretap investigation. Cruz explained that when an intercepted phone call is minimized that the audio portion of the conversation is completely shut down so that the monitor cannot hear it and it is not recorded. When listening to such a minimized call in discovery, it will simply sound

like "dead air." The court finds that with respect to all other intercepted communications with the exception of call # 278, this minimization procedure was properly adhered to and that no other attorney/client communications were either listened to or recorded by members of the Bergen County Prosecutor's Office.

Cruz first learned that call # 278 had been recorded the following day. He was surprised to learn of it; characterized it as "uncommon"; knew something was wrong and could not recall a similar event having occurred in the past. As to the explanation that appeared on the log sheet to the effect that the call was not monitored and not minimized and the equipment was not operational, Cruz admitted that may have just been an excuse.

Sergeant Alan Lustmann testified at the hearing that he was assigned to monitoring duties when call # 278 was intercepted. This was the first wiretap operation he had been assigned to monitor and, prior to beginning, he was instructed on the minimization procedures.

Call # 278 was received at 3:25 p.m. on October 23, 2006. At that time, Lustmann was the monitor. He testified that when the call came in to the target number (i.e. defendant), he was working on the log and did not note either the visual prompt or the audible signal which would alert him to the existence of the call. He indicated his belief that he had mistakenly put the earphones down and left them plugged in as the reason he was unable to hear the audible signal, and was uncertain as to whether the equipment gave the appropriate visual prompt. As a result, he was unaware that call # 278, which he indicated was privileged, had been recorded in its entirety. The call was slightly over five minutes in duration.

At approximately 4:00 p.m., when his shift was ending and all calls had to be accounted for, Lustmann realized he had missed a call and, upon further checking, realized that it was a call between defendant and the Lesnevich law office. Lustmann then notified his superior, Sergeant Lynn Morrissey, who instructed him that the call was not to be listened to. Accordingly, he has never

listened to the call, nor to his knowledge has anyone else from the Bergen County Prosecutor's Office, specifically, Christiana, Cruz, Morrissey, Lieutenant Carmen Martino, Detective Laurie Schweizer and Captain Joseph Hornyak, all of whom testified to that effect at the evidentiary hearing.

Santulli was the assistant prosecutor assigned to the case. He was alerted by Martino and Hornyak within a day or so of when call # 278 was recorded. Although Santulli instructed them to provide him with a detailed report, he never received more than the synopsis prepared by Lustmann. He never listened to the call, nor to his knowledge did anyone else from the Bergen County Prosecutor's Office. As a result, he does not know the parties to the call nor its contents. It was never played before the grand jury, nor were the contents shared with Assistant Prosecutor Mello, to whom the case has been re-assigned for trial.

Santulli further testified that when alerted to this event, which he characterized as unusual, he did not seek out his supervisor or the Bergen County Prosecutor, nor did he advise the issuing judge, Judge Clark. Although the recorded conversation was provided to defense counsel as part of the voluminous discovery, there was no specific mention made of call # 278 having been intercepted.

### I. *The Violation*

█ The initial set of wiretap orders issued by Judge Clark on September 18, 2006, clearly contained a restriction that "no attorney client conversations may be intercepted." In fact, that prohibition was clearly and unequivocally handwritten in the orders by Judge Clark. Hence, this court finds that the Bergen County Prosecutor's Office was specifically placed on notice from the outset that the interception of such attorney/client calls was not approved.

Also, this court finds that copies of the orders authorizing the wiretaps and required minimization procedures were distributed to all personnel monitoring the intercepted communications, by

way of the distribution to them of Santulli's memorandum and the decision of the New Jersey Supreme Court in *State v. Catania, supra,* 85 *N.J.* 418, 427 *A.2d* 537.

Notwithstanding, this court finds that call # 278 was intercepted and recorded by the Bergen County Prosecutor's Office in its entirety. As such, it is clear to the court that Judge Clark's orders, as extended, were violated. Also violated were the Bergen County Prosecutor's Office's own protocol on minimization procedures and relevant case law associated therewith.

█ It is also clear that the recorded conversation between defendant and Lesnevich falls squarely within the ambit of the attorney-client privilege. The lawyer-client privilege is recognized as the oldest privilege for confidential communications known to the common law. *Upjohn Co. v. United States,* 449 *U.S.* 383, 389, 101 *S.Ct.* 677, 682, 66 *L.Ed.2d* 584, 591 (1981); *Halbach v. Boyman,* 369 *N.J.Super.* 323, 848 *A.2d* 880 (App.Div.2004). It has been codified at *N.J.S.A.* 2A:84A–20 and in *N.J.R.E.* 504. The primary justification and dominant rationale for the privilege is the encouragement of free and full disclosure of information from the client to the attorney. *See Fellerman v. Bradley,* 99 *N.J.* 493, 498, 493 *A.2d* 1239 (1985). When the client seeks representation on a criminal charge, the need for confidentiality is even greater than in civil cases. *In re Nackson,* 221 *N.J.Super.* 187, 534 *A.2d* 65 (App.Div.1987), *aff'd on other grounds,* 114 *N.J.* 527, 555 *A.2d* 1101 (1989). *See also Sugar, supra,* 84 *N.J.* at 12, 417 *A.2d* 474. Additionally:

> The degree to which state policy respects the importance of the confidentiality of attorney-client communications is reflected in New Jersey's wiretap law, which requires the State to show a "special need" before the telephone of an attorney may be legally tapped. *N.J.S.A.* 2A:156A–11. There is no comparable special protection in the Federal wiretap statute.
> [*Biunno, Current N.J. Rules of Evidence,* Comment 1 to *N.J.R.E.* 504 (2011).]

For the reasons expressed above, this court finds that call # 278, a confidential communication falling within the attorney-client privilege, was unlawfully intercepted and recorded, and further that such interception was not made in conformity with the

orders of authorization granted by Judge Clark, all in violation of the New Jersey Wiretap Act.

## II.  *The Remedy*

■ This court thus having found that a privileged attorney-client communication was unlawfully intercepted by the State, now turns its focus to an analysis of the proper remedy attendant to that violation.

The defense seeks dismissal of the indictment. Dismissal of the charges was similarly sought by the defendant in *Sugar, supra,* 84 *N.J.* 1, 417 *A.*2d 474. There, the Vineland police utilized a concealed microphone in an interrogation room in police headquarters to intentionally eavesdrop on conversations between the defendant and his attorney, during which the attorney made three statements reflecting an awareness of possible decisions about trial strategy. *Id.* at 7, 417 *A.*2d 474. Search warrants were applied for and obtained and criminal complaints were prepared charging the defendant with the murder of his wife. *Id.* at 7, 417 *A.*2d 474. Subsequently, the State Division of Criminal Justice was advised of the illegal eavesdropping, whereupon the Attorney General removed the Vineland Police Department and the Cumberland County Prosecutor's Office from the case and assumed its investigation and prosecution. *Id.* at 8, 417 *A.*2d 474.

Confronted with the above facts, the Supreme Court in *Sugar* reversed the order of the trial court which dismissed the criminal complaints and enjoined the State from further prosecuting the defendant for his wife's death. *Id.* at 26–27, 417 *A.*2d 474. Despite stating that it was "outraged" by the government misconduct, it nevertheless declined to dismiss the prosecution, indicating that dismissal is the appropriate remedy for official intrusion upon attorney-client relationships only where it destroys that relationship or reveals defendant's trial strategy. *Id.* at 21, 417 *A.*2d 474. Since the court determined that neither factor was implicated, it held that dismissal was too drastic a remedy. Rather, in the

court's view the exclusion of tainted witnesses and evidence was deemed to be the appropriate remedy. *Id.* at 25, 417 *A.*2d 474.

Similarly, in *State v. Santiago*, 267 *N.J.Super.* 432, 434, 631 *A.*2d 997 (Law Div.1993), the defense moved to dismiss the indictment on the basis that the right to a fair trial and effective assistance of counsel had been compromised where privileged conversations between the defendant and his attorney were inadvertently recorded by the courtroom's sound system. The defendant contended that the recording of those privileged communications, including potentially inculpatory statements and discussions of defense strategy, permanently impaired defense counsel's ability to provide constitutionally effective assistance. *Id.* at 435, 631 *A.*2d 997. The court, turning to *United States v. Noriega,* 764 *F.Supp.* 1480 (S.D.Fla.1991) for guidance, cited three factors that must be found before a Sixth Amendment violation is established: (1) the government's intrusion was intentional; (2) the prosecution obtained confidential information pertaining to trial preparation and defense strategy as a result of the intrusion; and (3) whether the information obtained provided, directly or indirectly, any evidence used at trial or was used in some other way to the defendant's substantial detriment. *Id.* at 436–437, 631 *A.*2d 997.

Applying the above standards, the court in *Santiago* declined to dismiss the indictment. It found that the recording was not done at the behest of the State and, since the tape was sealed by court order, no one actually heard the conversation, and accordingly, the defendant had failed to demonstrate any prejudice. *Id.* at 437–438, 631 *A.*2d 997.

In the case at bar, this court finds that, like *Santiago* but in contrast to *Sugar,* the recording of the privileged communication was not done intentionally but rather was inadvertent. This court, having conducted an evidentiary hearing and thus having had the opportunity to assess the demeanor and credibility of the witnesses, accepts Lustmann's version of the events. He was forthright and candid in admitting that by leaving the earphones in the monitoring device he thereby improperly recorded and failed to

minimize a privileged communication, and he accepted responsibility for his error. Rather than concealing it, at the end of his shift when he discovered the violation, he promptly brought it to the attention of a superior officer.

In determining this unauthorized interception to be inadvertent, the court also looks to the significant number of phone calls which indisputably transpired between defendant and the Lesnevich law office. This court finds that those other communications were promptly minimized and not recorded. Hence, rather than establishing a pattern of unauthorized and unlawful interception of privileged communications, the court finds the interception and recording of call # 278 to have been an isolated and aberrant event.

As in *Santiago*, and unlike *Sugar*, this court finds no evidence that any member of the Bergen County Prosecutor's Office actually listened to call # 278, and hence is unable to conclude that the State obtained any confidential information pertaining to trial preparation and defense strategy. In arriving at this determination the court has again assessed the credibility of the State's witnesses who testified at the hearing and finds their testimony credible.

At the request of the defense the court listened to call # 278 in *camera*. Two topics were discussed between Lesnevich and defendant during that call which was slightly longer than five minutes in duration. One of these topics the court finds to be substantively innocuous. As to the other, the court finds it to be more akin to what the Supreme Court in *Sugar* categorized not as a revelation of trial strategy or a strategic decision, but more accurately reflects an awareness of a possible defense.

In *Sugar* the Court also appears to have concluded that the unlawful intrusion had not interfered with the defendant's ability to place trust and confidence in his attorney. Also, no destruction of the attorney-client relationship seems to have been either asserted or established by the defendant in *Santiago*. Similarly, in the case at bar, this court finds no interference with the

attorney-client relationship and that Lesnevich, once the violation was brought to his attention, has moved expeditiously and zealously to safeguard his client's rights in seeking to have the indictment dismissed.

For all the reasons expressed above, the court determines that dismissal of the indictment is not warranted under the facts and circumstances of this case and accordingly, defendant's motion to dismiss the indictment is hereby denied.

Despite declining to order dismissal, this court nonetheless finds various aspects of the State's actions troubling. The source of the court's consternation is by no means confined to the initial unauthorized and unlawful interception, which the court notes was not merely a short thirty-second or so conversation but rather a lengthier conversation spanning more than five minutes when the monitor's attention was instead focused on other activities. Simply put, while the court does find the interception and recording was inadvertent, it should not have occurred.

What the court finds even more troubling are the events which transpired thereafter. The court finds that the improper interception was promptly reported by the monitor to his supervisor and up through the chain of command in the Bergen County Prosecutor's Office. Nonetheless, this court finds that the proper steps to minimize the potential harmful effects of the unlawful interception were not then taken. The Prosecutor's Office was aware that Lesnevich represented defendant prior to the time the initial wiretap orders were applied for and obtained. In fact, Judge Clark specifically provided by handwritten notation in the initial wiretap orders that no attorney-client communications were to be intercepted. Rather than immediately advising Judge Clark that her orders had been violated and that potentially privileged communications had been intercepted and fully recorded and seeking further direction from Judge Clark, the State opted to remain silent. At a minimum, Judge Clark could have ordered the recording sealed, so that further potential intrusion into the sanctity of that privileged communication could have been pre-

vented. In addition to sealing the recording, certain other options may have been available to Judge Clark at that juncture, including terminating the wiretap operation, refusing to enter any further wiretap orders or extensions, or referring the matter to the Attorney General's Office or another appropriate agency for investigation and/or prosecution of the case against defendant. However, we will never know which of these or any options Judge Clark would have implemented due to the State's failure to bring the violation to her attention despite the State's awareness of it.

It appears that the only corrective measure the State undertook was to verbally advise members of the monitoring team not to listen to the recording. No similar written admonition appears to have been prepared. Neither was any more detailed narrative report prepared relative to the incident beyond the wiretap log synopsis as requested by the assistant prosecutor.

As stated above, rather than having the subject communication sealed by the court, it appears to have remained in place along with all the other communications intercepted until eventually it was sealed by the court as part of its general sealing order. Thus, while the court accepts as credible the testimony of the witnesses who testified at the hearing that they did not listen to the recording, the court, defense counsel and the defendant are all left to speculate whether in the interim any of the other members of the investigation team had access to it or the ability to listen to it, be it inadvertently or otherwise.

Although not critical to this court's ultimate determination as to the appropriate remedy, exception is also taken to the State's manner of dealing with this issue following defendant's indictment. The court has been advised that the discovery in this matter is voluminous, consisting of some eighty compact discs. Rather than apprising defense counsel of this improper interception at the time discovery was provided, the State again chose to remain silent, thus placing defense counsel in the position of having to forage through this voluminous discovery until eventually coming upon it.

As noted earlier, although the Supreme Court in *Sugar* declined to dismiss the charges, it did determine that all tainted evidence should be suppressed. Based upon the State's unauthorized and unlawful interception, and the conduct which followed thereafter which this court determines to be equally or even more egregious, at that juncture the integrity of the wiretap operation became impugned. As in *Sugar*, this court thus finds that suppression of evidence is the appropriate remedy. While the court's decision in *Sugar* did not implicate the provisions of the Wiretap Act, this court looks to the express statutory provisions of that Act, which provide in pertinent part that the entire contents of all intercepted communications obtained during or after any interception which is determined to be unlawfully intercepted or not made in conformity with the order of authorization, or evidence derived therefrom, shall not be received in evidence. *N.J.S.A.* 2A:156A–21.

In *State v. Worthy*, 141 *N.J.* 368, 382–384, 661 *A.*2d 1244 (1995), the Court examined the legislative history behind the Wiretap Act and, specifically, the suppression remedy provided for therein. The Court noted that as originally enacted the statute provided that, "if the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall not be received in evidence in the trial, hearing or proceeding." *Id.* at 386, 661 *A.*2d 1244 (quoting *L.* 1968, *c.* 409, § 21). However, following dissatisfaction with the Court's ruling in *State v. Dye*, 60 *N.J.* 518, 291 *A.*2d 825 (1972) as evidenced in 1975 legislative hearings:

> The Legislature, as a result, clarified and strengthened the suppression remedy of section 21 as follows: "If the motion is granted, the *entire* contents of *all* intercepted wire or oral communications *obtained during or after any interception which is determined to be in violation of this act* ..., or evidence derived therefrom, shall not be received in evidence in the trial, hearing or proceeding." *L.* 1975, *c.* 131, § 21 (underlined words indicate 1975 additions). A plain and strict reading of the amended statute supports the proposition that all evidence derived from the illegal interception—the conversations recorded by that interception, conversations recorded after the unlawful interception, and other evidence "derived" from the illegal interception—shall be excluded.

[*Id.* at 387, 661 *A.*2d 1244.]

The Court in *Worthy* also noted that the Wiretap Act's exclusionary rule is not conditioned on a predicate finding of an intentional or deliberate violation or evasion of the Act's requirements. *Id.* at 385, 661 *A.*2d 1244. The statute, *N.J.S.A.* 2A:156A–21, contains no good-faith exception. Quoting its prior decision in *State v. Cerbo,* 78 *N.J.* 595, 603, 397 *A.*2d 671 (1979) the Court stated:

> Thus, we have held that "[t]he motives of the law enforcement officers and the presence or absence of any tactical advantages gained by the police or prejudice accruing to defendants shall be relatively unimportant in assessing the propriety of statutory relief."

[*State v. Worthy, supra,* 141 *N.J.* at 385, 661 *A.*2d 1244.]

In the present case this court has concluded that the improper interception of the privileged attorney-client communication was inadvertent rather than intentional. However, the State's failure to bring it to the attention of, and to seek directions from, the wiretap judge, was knowing and intentional. Defendant had retained counsel virtually from the outset. The State was aware of that, as was Judge Clark who took specific steps to include a handwritten prohibition in the initial wiretap orders against the interception of attorney-client communications. Knowing that these orders were violated, this court finds that the State had an obligation to bring it to Judge Clark's attention. It did not do so. As a result the offending communication was not sealed. While verbal directions were imparted not to listen to the recorded conversation, this court finds such measure insufficient to properly safeguard it from intrusion. Hence, from that point forward, this court finds the wiretap investigation to have been tainted to such a degree that no remedy short of the express statutory exclusionary rule provided under *N.J.S.A.* 2A:156A–21 will suffice.

Accordingly, the entire contents of call # 278 are hereby suppressed, as are the entire contents of all intercepted communications obtained thereafter. Additionally, any evidence derived from those intercepted communications is hereby similarly suppressed.