# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0121-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

M.M.,

    Defendant-Appellant.

_____

> Argued December 2, 2024 – Decided December 24, 2024
>
> Before Judges Sabatino and Jacobs.
>
> On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 22-03-0398.
>
> Zachary G. Markarian, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Zachary G. Markarian, of counsel and on the briefs).
>
> Matthew T. Mills, Assistant Prosecutor, argued the cause for the respondent (William E. Reynolds, Atlantic County Prosecutor, attorney; Matthew T. Mills, of counsel and on the briefs).

PER CURIAM

Following jury trial, defendant appeals convictions for endangering the welfare of a child and sexual contact, acts committed against his granddaughter. Among the proofs leading to his convictions was a tissue with DNA material seized by the police without a warrant from a wastebasket in his bedroom. Defendant's motion to suppress admission of the tissue was denied by the trial court. On appeal, defendant argues the police were required to obtain a warrant before seizing the tissue and that the sole exception to the warrant requirement relied upon by the State in the trial court is inapplicable. We agree with defendant's position and therefore, we reverse the decision denying defendant's motion to suppress and vacate his convictions.

## I.

We derive the facts from testimony taken from evidence and testimony adduced at the motion to suppress hearing and subsequent trial. Defendant co-owned a home with his daughter, M.G.[1], where he resided with her and her two minor children. In April 2021, M.G.'s twelve-year-old daughter, M.U., revealed to her mother two recent incidents of sexual assault by defendant as well as an

---

[1]  We use initials to protect the identities of the parties and to preserve the confidentiality of the proceedings.  R. 1:38-3(d)(9)-(10).

eight-year long history of ongoing sexual assaults. After these incidents were reported to the police and notification was made to the Division of Child Protection and Permanency, defendant voluntarily vacated the home pursuant to a safety plan implemented by the Division.

In the defendant's absence, M.G. was interviewed by the Galloway Police Department. M.G. told the police she had located a tissue in defendant's room and wished to provide it as possible evidence against him.[2] She was asked to leave it in the wastebasket for an officer to come by the house to retrieve it. M.G. complied and police later retrieved the tissue without first obtaining a warrant. Ejaculate retrieved from the tissue was later matched to defendant.

Defendant was arrested in February 2022. In March 2022, an Atlantic County grand jury returned an indictment charging defendant with second-degree endangering the welfare of a child, N.J.S.A 2C:24-4(a)(1)) (count one), and first-degree aggravated sexual assault, N.J.S.A 2C:14-2(a)(1) (count two).

Defendant moved to suppress the tissue purportedly used to wipe ejaculate from himself following one of the recent assaults. At the close of the hearing, the State conceded "that by the letter of the law the victim's mother probably did

---

[2] The record refers to the item alternately as a "tissue," "napkin," or "tissue napkin." We refer to the item consistently in its generic form, "tissue."

A-0121-23

not have the legal right to consent to a search of her father's bedroom." This concession was based on uncontroverted testimony that defendant had not given consent for anyone to search his bedroom. Nor was M.G. given a consent-to-search form to sign. Instead, the State relied on the testimony of Detective Matthew Worth of the Galloway Police Department, the sole witness to testify at the hearing. From Worth's testimony, the State argued the evidence was constitutionally admissible under the doctrine of inevitable discovery.

At the hearing's conclusion, the State argued:

> In sum, the State would submit that there was probable cause to apply for a search warrant . . . based on the statement by the victim that [defendant] had wiped himself following an ejaculation recently, sometime during that week. And the inference that that could have been found in the trashcan.
>
> The State would submit that had that search warrant been submitted to the [c]ourt that the [c]ourt would have granted that search warrant. That would have been the better course, absolutely. That would have been the better course.
>
> I don't think that the officer – in fact, I know that the officer was not trying to skirt the Constitution here in asking mom for consent. It was a mistake. It was an honest mistake.
>
> But had a search warrant been applied for[,] it would have been granted. There would have been probable cause to grant that search warrant. So under th[e]

4

inevitable discovery doctrine, had the State gone that route, this evidence would have been acquired.

Three weeks following the suppression hearing, the court sua sponte contacted both counsel via email, stating that it "lack[ed] sufficient information" as to the issue of consent, and consequently, the court would "reopen the record for another two weeks for any additional testimony or evidence from either party." A second testimonial hearing was held in which the State recalled Detective Worth and called M.G. to testify. Defendant also testified. M.G. and defendant's testimony was in conflict over whether other family members had unfettered access to defendant's room, with M.G. claiming other family members would watch television, help themselves to snacks, and occasionally empty defendant's wastebasket as part of their household chores. In contrast, defendant claimed the television did not work and was not even "hooked up." Defendant affirmed the characterization by his counsel that he "told people not to come in [his] room" and "to stay out of [his] room." Defendant further affirmed that "no one had to come in and clean [his] room" and that only he would empty the trash from his room.

After this second hearing, the trial court denied defendant's motion, concluding the State met its burden that "[M.G.] had actual authority to consent to the search" and, in the alternative, that "the tissue would have been admitted

5

through inevitable discovery."

Trial began in February 2023. Upon conclusion of testimony and at joint request of the State and defense counsel, the trial court charged the jury with second-degree sexual contact, N.J.S.A. 2C:14-2(b), the lesser-included offense of first-degree aggravated sexual assault. Defendant was found guilty of endangering the welfare of a child and second-degree sexual contact. He was acquitted of first-degree aggravated sexual assault.

In July 2023, defendant was sentenced to ten years of imprisonment for the endangering conviction, subject to an 85% period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A 2C:43-7.2, to run concurrent with five years of imprisonment for the sexual contact conviction. Defendant was ordered to comply with Megan's Law and parole supervision for life registration requirements. Additionally, the court imposed Sex Crime Victim Treatment Fund penalties ("SCVTF").

## II.

On appeal, defendant raises the following arguments:

POINT I

THE MOTION COURT'S SUA SPONTE DECISION TO REOPEN THE SUPPRESSION HEARING TO SEEK EVIDENCE ABOUT THE CONSENT EXCEPTION –

WHICH THE STATE HAD ALREADY CONCEDED WAS NOT APPLICABLE – WAS INAPPROPRIATE.

POINT II

M.G.'S CONSENT TO SEARCH M.M'S BEDROOM WAS INVALID BECAUSE SHE DID NOT HAVE ACTUAL AUTHORITY AND OFFICERS COULD NOT RELY ON HER APPARENT AUTHORITY WITHOUT ASKING ANY QUESTIONS ABOUT HER USE OF THE ROOM.

A. Officers Could Not Rely on M.G.'s Apparent Authority Because They Knew the Bedroom Belonged to M.M. and Did Not Ask M.G. Questions About Her Use or Access of the Room Prior to Seeking Her Consent.

B. M.G. Did Not Have Actual Authority Over M.M's Room Because She Did Not Sleep, Spend Time, or Store Her Possessions in the Room.

C. The State Did Not Meet Its Burden to Show the Evidence Would Have Been Inevitably Discovered.

POINT III

THE SENTENCING COURT ERRED IN WEIGHING UNCHARGED ALLEGATIONS IN AGGRAVATION AND IN FAILING TO EXPLAIN THE REASONS FOR THE SCVTF PENALTIES IMPOSED.

A. The Court Based Its Aggravating Factor Findings in Large Part on Uncharged Allegations That M.M. Had Abused M.U. for "Years."

7

B. The Sentencing Court Failed to State Its Reasons for the Discretionary Amount of the SCVTF Penalties It Imposed.

To begin, we assess the legal principles applicable to defendant's first two arguments.

The Trial Court's Sua Sponte Reopening of Testimony

In a criminal proceeding, "[t]he roles of the judge, prosecutor and defense attorney are distinct. The attorneys are advocates for the respective sides, while the judge is to be the neutral adjudicator." State v. Swint, 328 N.J. Super. 236, 260 (App. Div. 2000). A judge "is not an adversarial party" to a criminal proceeding. State v. Santiago, 267 N.J. Super. 432, 437 (Law Div. 1993). "[T]he judge represents no one." Ibid. The function of a trial judge is to remain impartial and detached and "should neither take sides nor appear to take sides in the dispute." Frugis v. Bracigliano, 351 N.J. Super. 328, 351 (App. Div. 2002), rev'd on other grounds, 177 N.J. 250 (2003).

Defendant argues that the trial court's sua sponte decision to reopen the suppression hearing to seek evidence about the consent exception was inappropriate, in consideration of the State's acknowledgment that that exception could not be established. Rather, the State argued for the admission

of the evidence solely based on the inevitable discovery doctrine. As such, defendant agues the court's intervention to revive the consent theory for which the State failed to present evidence in the first hearing created a clear appearance of partiality, compelling reversal of the court's decision to uphold the search on the basis of consent.

The State argues the trial court was indeed tasked with considering the issue of consent. It observes the consent exception was broached during the first hearing when the State asked Detective Worth, "Did she give you verbal permission?" to which Worth responded, "Yes." The State further argues that the objectively credible facts, such as those elicited in testimony, provide the basis for the court's determination; a court's decision does not turn on oral argument. The State relies on State v. Medina, where this court explained that "[t]rial judges are vested with the authority to propound questions to qualify a witness's testimony and to elicit material facts on their own initiative and within their sound discretion." 349 N.J. Super. 108, 131 (App. Div. 2002). The State also relies on N.J.R.E. 611(a), which provides that a judge "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence to make [the interrogation and presentation] effective for determining the truth." Finally, the State asserts a court "may call a witness"

and "may examine a witness."  N.J.R.E. 614(a), (b).

M.G.'s Authority to Consent

The Fourth Amendment and the State's counterpart in the New Jersey Constitution, Art. I, par. 7 (1947), proscribes unreasonable searches and seizures that are state action, where government conduct is distinguished from private party conduct.  Burdeau v. McDowell, 256 U.S. 465 (1921).  Searches and seizures conducted by private parties are not subject to constitutional restraints. Id. at 475.  The New Jersey courts have adhered to this distinction presented in Burdeau as to government and private party searches.  See State v. Navarro, 310 N.J. Super. 104, 107 (App. Div. 1998).  Accordingly, a threshold question in analyzing the search or seizure of evidence is whether it was the product of state action or private action.  Generally, if a court determines there is no state action, then the evidence is admissible.  However, if a government actor conducted the search or seizure, or if there was a sufficient nexus between a government actor and a private actor, then it is the role of the court to determine if it complied with the federal and state constitutions.  See generally Navarro, 310 N.J. Super. at 107, 109.

A different standard applies when there is an initial search by a private party who uncovers evidence and then alerts the police, as here.  Although M.G.

is not a government actor, the search became subject to the Fourth Amendment constitutional protections by virtue of Detective Worth's active involvement in arriving at the home and ultimately seizing the tissue from the wastebasket.

The New Jersey Supreme Court has "long respected the heightened protections of privacy and solitude in one's dwelling." State v. Ramirez, 252 N.J. 277, 311 (2022) (citing State v. Legette, 227 N.J. 460, 472 (2017) (noting the "special status of one's home and the right to be free from warrantless searches and seizures"). Warrantless searches are presumptively unreasonable and are prohibited unless they fall within a recognized exception. See State v. Wilson, 178 N.J. 7, 12 (2003). Most pertinent here is the "consent search" exception, Schneckloth v. Bustamonte, 412 U.S. 218 (1973), and the "third-party intervention" exception, United States v. Jacobsen, 466 U.S. 109 (1984). When a warrantless search is conducted, the State has the burden of proving its validity by a preponderance of the evidence. Wilson, 178 N.J. at 12-13.

"Since we hold to the 'centuries-old principle of respect for the privacy of the home,' 'it is beyond dispute that the home is entitled to special protection as the center of the private lives of our people.'" Georgia v. Randolph, 547 U.S. 103, 115 (2006) (citation omitted) (first quoting Wilson v. Layne, 526 U.S. 603, 610 (1999); and then quoting Minnesota v. Carter, 525 U.S. 83, 99 (1998)

11

(Kennedy, J., concurring)). In certain circumstances, "a person other than the defendant may validly consent to the search of the defendant's home or property." State v. Miranda, 253 N.J. 461, 476 (2023). The validity of this third-party consent depends on the party's authority to consent and scope of such consent. United States v. Matlock, 415 U.S. 164, 171 n.7 (1974). In the federal courts, the person who consents must have lawful authority over the premises or thing to be searched at least equal to the party who later disputes the search's validity. State v. Earls, 420 N.J. Super. 583, 591-92 (App. Div. 2011). "A showing of such common authority 'rests . . . on mutual use of the property by persons generally having joint access or control for most purposes . . . .'" Ibid. (quoting Matlock, 415 U.S. at 171 n.7). An analysis of property rights is inappropriate in determining the right to consent. Randolph, 547 U.S. at 114-16.

The New Jersey Supreme Court has also recognized that a third party may bind the accused when the third party has authority to consent to a search. State v. Cushing, 226 N.J. 187, 200 (2016). Under New Jersey law, apparent authority to consent to a search "arises when a third party (1) does not possess actual authority to consent but appears to have such authority and (2) the law enforcement officer reasonably relie[s], from an objective perspective, on that

appearance of authority."  Cushing, 226 N.J. at 199-200 (citing Illinois v.

Rodriguez, 497 U.S. 177, 185-89 (1990)).  If it is an "officer's belief that the

third-party ha[s] the authority to consent [and it is] objectively reasonable in

view of the facts and circumstances known at the time of the search," then the

officer's belief is sufficient to bind the accused under our state's constitutional

requirements.  Cushing, 226 N.J. at 200 (citing State v. Coles, 218 N.J. 332, 340

(2014)).

Consistent with this line of cases, our Supreme Court held in State v.

Wright that third-party intervention or private search doctrine does not exempt

law enforcement's initial search of a defendant's home from the warrant

requirement, absent exigency or some other exception to the warrant

requirement.  221 N.J. 456 (2015).  In that holding, the Court stressed "the

preeminent position of a private residence" and our law's "clear preference for

police officers to secure a warrant before entering and searching a home."  Id.

at 468.

From these principles, we hold that it was inappropriate for the trial court

to sua sponte schedule a supplemental hearing, allowing – if not inviting - the

State the opportunity to resuscitate a theory it had explicitly declined to pursue.

The record demonstrates that but for the court's unprompted intervention, the State would not have pursued a third-party consent theory to admit the tissue. At the hearing's close, the State acknowledged it was not pursuing a theory of consent. Left to their proofs – which, in short, is what was called for - the trial court would and should have rendered a decision based on the evidence adduced at the first suppression hearing and the State's theory of inevitable discovery. By initiating a second hearing, the trial court "cross[ed] that fine line that separates advocacy from impartiality." Village of Ridgewood v. Sreel Inv. Corp., 28 N.J. 121, 132 (1958).

Moreover, even if argued at inception, the State's theory of consent was untenable. The record is clear that while M.G. may have entered defendant's room on occasion, she had neither "mutual use" of defendant's bedroom nor "joint access or control for most purposes[.]" State v. Lamb, 218 N.J. 300, 316 (2014) (quoting Matlock, 415 U.S. at 171 n.7 (1974)). By operation of law, the police may not exceed the scope of the private search absent a right to make an independent search. State v. Premone, 348 N.J. Super. 505, 512 (App. Div. 2002) (citing Walter v. United States, 447 U.S. 649, 657 (1980)). Because M.G. did not have legal authority to freely enter defendant's bedroom and inspect his wastebasket, neither did the police have the right, absent a warrant, to make an

14

independent search or themselves legally secure the fruits of such an illegal search. Stated generally, defendant's cohabitation with other family members does not diminish his Fourth Amendment rights, expectations of privacy, or the sanctity of his private bedroom absent valid consent to search.

Addressing the State's announced argument of inevitable discovery for the validity of the tissue's seizure, the State must demonstrate that:

> (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.
>
> [State v. Caronna, 469 N.J. Super. 462, 500 (App. Div. 2021); see also State v. Holland, 176 N.J. 344, 361-62 (2003) (enumerating the facets of the inevitable discovery doctrine).]

The inevitable discovery exception does not apply here, because the police did not satisfy the standard's third prong. Specifically, the police "took no affirmative steps to secure legal process" independent of the illegal search. State v. Camey, 239 N.J. 282, 306 (2019); see also Premone, 348 N.J. Super. at 510 (refusing to apply the inevitable discovery doctrine where the State argued it could have obtained information by way of a search warrant but had not taken

15

any steps to do so).  It is not enough for the State to argue "had that search warrant been submitted to the [c]ourt[,] . . . the [c]ourt would have granted that search warrant."  As we have held, arguing that one had sufficient evidence to obtain a warrant does not obviate the need to actually seek and obtain a warrant. State v. Lashley, 353 N.J. Super. 405, 409 (App. Div. 2002).  Where, as here, there was no exigency or other applicable exception, to accept such a standard would be the equivalent of swallowing whole the warrant requirement of our federal and state constitutions.  We therefore conclude that the tissue was unconstitutionally seized.  In view of this holding, we do not address defendant's third point regarding purported errors in sentencing.

In sum, the order denying defendant's motion to suppress evidence seized from his bedroom is reversed.  Defendant's judgment of conviction and sentence are vacated, and the matter is remanded for a new trial in which the tissue will not be admitted in evidence.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0121-23