239 N.J. Super. 645 (1990)
571 A.2d 1373
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RUBEN DARIO OSPINA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 14, 1990.
Decided March 30, 1990.
*647 Before Judges DEIGHAN, R.S. COHEN and VILLANUEVA.
Thomas S. Smith, Jr., Acting Public Defender, attorney for appellant (Capitola Young, Designated Counsel, of counsel and on the brief).
Mr. Ospina submitted a pro se supplemental brief.
Robert J. Del Tufo, Attorney General, attorney for respondent (Marijean Raffetto Stevens, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
*648 Defendant Ruben Ospina was indicted with his wife Elena and her nephew Ruben Cuartas for conspiracy to possess cocaine with intent to distribute, conspiracy to possess the cocaine, possession of at least one ounce of cocaine with at least 3.5 grams of pure free base, and possession of the cocaine.
Just before trial, Cuartas pleaded guilty to possession with intent to distribute with an agreed sentence cap of fifteen years' imprisonment and a five-year mandatory minimum term. Cuartas agreed to testify truthfully for the State in defendant's trial, and the State agreed to tell the sentencing judge of Cuartas's cooperation.
Tried to a jury with his wife Elena, defendant was convicted of all charges and his wife was acquitted. Essentially, the State's evidence was that Cuartas had a New York source of cocaine; that he arranged with defendant to purchase a kilogram for $38,000; that defendant found customers for a higher price who turned out to be police agents; that after supplying a sample to the customers preparatory to the sale, defendants were arrested and the cocaine was found in defendant's bedroom closet. Defendant's wife testified in her own behalf, corroborating the bulk of the State's case and minimizing her own role.
For possession with intent to distribute, defendant was sentenced to a 30-year term of imprisonment. The other convictions were merged. Defendant made a motion for a new trial. He then withdrew the motion in open court even though the trial judge told him that he planned to grant the motion. Some time later, defendant renewed the motion for a new trial. It was denied on the thesis that it had been withdrawn and thus waived. Defendant appealed.
Defendant raises a number of arguments on appeal. The principal one is that his wife should not have been permitted to testify against him in their joint trial in violation of Evid.R. 23(2). He contends that the testimony was not only improperly *649 admitted but was also significant evidence against him, because in distancing herself from the criminal situation, his wife described in great detail her observations of his participation.
The issue did not come up until the fourth day of trial, when defendant for the first time moved for an order prohibiting his wife from testifying. He relied on Evid.R. 23(2) which says:
The spouse of the accused in a criminal action shall not testify in such action except to prove the fact of marriage unless (a) such spouse and the accused shall both consent, or (b) the accused is charged with an offense against the spouse, a child of the accused or of the spouse, or a child to whom the accused or the spouse stands in the place of a parent, or (c) such spouse is the complainant.
Clearly, none of the stated exceptions applies. The trial judge ruled that he could not prohibit defendant's wife from testifying in her own defense. In those circumstances, he held that defendant had waived the objection by not asserting his privilege until well into trial when it was too late for his wife to move for severance. Defendant expressly and specifically declined to move for severance.
In our view, the trial judge's ruling was sound.
The privilege of a criminal defendant to bar spousal testimony, and of the spouse to refuse to testify, has ancient and twisted roots. It was originally a rule of disqualification, the result of two "canons of medieval jurisprudence," the first that an accused could not testify in criminal proceedings and, the second that his wife was therefore also barred because she had no recognized separate legal existence. Trammel v. United States, 445 U.S. 40, 44, 100 S.Ct. 906, 909, 63 L.Ed.2d 186, 190 (1980).
The rule of disqualification gradually evolved into one of privilege, see Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933), with an entirely different justification. Its purpose is now conceived of as fostering the harmony and sanctity of the marriage relationship. State v. Briley, 53 N.J. 498, 504-505, 251 A.2d 442 (1969). Another factor, according to Wigmore, is the natural repugnance of fair-minded people to *650 compelling one spouse to condemn the other, and to subjecting the other to the humiliation "of being condemned by the words of his intimate life partner." 8 Wigmore, Evidence, § 2228 at 217 (1961). The privilege to bar spousal testimony has been criticized by Wigmore as an "anachronism in legal theory and an indefensible obstruction to truth in practice," op. cit. supra, § 2228 at 221, and by McCormick as "an archaic survival of a mystical religious dogma and of a way of thinking about the marital relation that is today outmoded." McCormick, Evidence, § 66 at 145-146 (2d Ed. 1972). Their criticisms do not bear on the separate and additional privilege of Evid.R. 28 to bar testimonial revelation of confidential marital communications.
The privilege to bar all spousal testimony has been narrowly construed. The United States Supreme Court, which retains authority to continue the evolutionary common law development of testimonial privileges in federal criminal trials, restricts the exercise of the privilege to the witness spouse only, and has ended the privilege of the accused spouse altogether. Trammel v. United States, supra. Some but not all United States Courts of Appeals have gone further and recognized a "joint participants" exception which limits the privilege to cases in which the witness-spouse is neither a victim nor charged as a criminal participant. United States v. Clark, 712 F.2d 299 (7 Cir.1983) and cases cited at 301.
Because Evid.R. 23(2) was statutorily adopted in N.J.S.A. 2A:84A-17, we are reluctant to create the Winberry v. Salisbury[1] confrontation that would be necessarily involved in judicial renovation of the privilege. Similar reluctance was recently expressed by the New Jersey Supreme Court in State v. D.R., 109 N.J. 348, 537 A.2d 667 (1988), in restricting judicial modification of hearsay exceptions in child-victim sexual abuse *651 prosecutions. The Supreme Court has noted, however, that privileges to bar testimony are "obstacles in the path of the normal trial objective of a search for ultimate truth. They are accepted only because in the particular area concerned, they are regarded as serving a more important public interest than the need for full disclosure." State v. Briley, 53 N.J. 498, 506, 251 A.2d 442 (1969). In Briley, defendant's wife was held competent to testify against him on all issues in his trial for murder of another and a related atrocious assault and battery of the wife. In State v. Santoro, 229 N.J. Super. 501, 552 A.2d 184 (App.Div. 1988) we ruled that, despite the literal breadth of the language, Evid.R. 23(2) bars only the prosecutor's use of a defendant's spouse as a witness, and does not preclude a defendant from compelling the spouse to testify on his or her behalf.
The point is that the Evid.R. 23(2) privilege does not attract generous and sympathetic application. Its original foundation has long since disappeared. The modern justification of promoting family peace at the risk of frustrating justice is very shaky. As Chief Justice Burger observed in Trammel v. United States:
When one spouse is willing to testify against the other in a criminal proceeding  whatever the motivation  their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony for the privilege to preserve. [445 U.S. at 52, 100 S.Ct. at 913, 63 L.Ed.2d at 196].
One might also wonder what interest society has in protecting the harmony of marital bonds forged in shared criminality. As for the humiliation of public spousal condemnation, it seems a cost worth incurring in the interest of ascertaining the full factual truth. To the extent that confidential spousal communications deserve protection, it is afforded by the more focused privilege contained in Evid.R. 28, and does not depend on the much broader exclusion of Evid.R. 23(2).
We have no authority to narrow the Evid.R. 23(2) privilege. Since rigid adherence to its letter promotes the suppression of truth, however, we have the obligation to apply it "in sensible *652 accommodation to the aim of a just result." State v. Briley, 53 N.J. at 506, 251 A.2d 442.
Against this background, we examine the question whether it was error to permit defendant's wife to testify at their joint trial. The answer is determined by the procedural posture of the case at the time defendant attempted to exercise the privilege to bar his wife's testimony.
Defendant and his wife were indicted together on September 10, 1985. The trial started three months later, on December 9. From September, it was apparent that there was one joint indictment, and that unless something intervened the defendants would be tried together. R. 3:7-7. If joint trial was thought by defendant to be prejudicial, he could have made a pretrial motion for severance. R. 3:15-2. He did not do so. The realistic prospect that a co-indicted spouse would choose to testify on her own behalf is sufficient reason to order severance of trial. See State v. Infinito, 180 N.J. Super. 75, 79, 433 A.2d 816 (App.Div. 1981) (concurring opinion); State v. White, 195 N.J. Super. 457, 460, 480 A.2d 230 (Law Div. 1984). The very similar Bruton[2] problem is solved by a rule requiring severance. R. 3:15-2(a).
Defendant's wife made a pretrial motion for a severance. She wanted separate trials, with defendant's going first, because she expected him to admit his own role but clear her, but feared that he would not be willing to do so when he himself was on trial. The motion was denied. As far as we can tell, there was no mention by anyone in connection with that motion of the possibility that one of the indicted spouses might testify to matters damaging to the other.
At the commencement of trial, another opportunity passed to explore the subject. Defendant moved for mistrial and severance *653 of his trial because his wife's attorney had forecast in his opening that defendant would take the stand and clear his wife. The motion was denied. It is, at the very least, surprising that with all the early talk about defendant's testifying or not testifying, no one focused on the possibility that the wife might testify adversely to defendant.
Only at the end of the State's case was the subject raised in defendant's motion to bar his wife. At that point the trial judge had these alternatives: to prohibit the wife from taking the stand, which would impermissibly violate her right to testify in her own defense; to edit out all her testimonial references to her husband's actions, an obviously impossible course; to sever the trials, continue against the wife and mistry the case against defendant, a choice that defense counsel expressly declined to sponsor and which might have created double jeopardy problems; to sever the trials, mistry against the wife and continue against defendant, a choice which clearly created future double jeopardy issues. The final alternative was the one the judge chose: to deny defendant any relief on the ground that he had waited too long to raise the issue.
The spousal privilege of Evid.R. 23(2) is a right to bar testimony which, although material to the ascertainment of truth at trial, offends a non-evidentiary societal value. But it does not protect an interest of constitutional dimension; enforcement does nothing to restrain official lawlessness, protect the trial from bad evidence, or purify the processes of the criminal justice system. In these circumstances, the spousal privilege is one which can be waived by the absence of timely assertion by counsel, whether or not the accused has approved the non-assertion or is even aware of the issue.
It is not clear why defendant asserted the privilege so tardily and at a time when enforcing it would impose so high a cost on the co-defendant or the ongoing trial. It may have been a tactical effort to abort one or both parts of the joint trial, or to inject error or uncertainty into the proceedings, or it may have *654 been a failed effort actually to bar the wife's testimony, or perhaps defense counsel's reasonable expectations about the wife's defense strategy may suddenly have been disappointed, or perhaps the whole issue just occurred to defense counsel. Whatever the reason, the lateness of the hour was sufficient cause to bar assertion of the privilege, and we have no hesitancy visiting on defendant the outcome of the game plan, where the outcome is the admission of highly relevant testimony.
Defendant invokes Evid.R. 37 in support of his argument that late assertion of the spousal privilege cannot constitute a waiver. Evid.R. 37 states:
A person waives his right or privilege to refuse to disclose or prevent another from disclosing a specified matter if he or any other person while the holder thereof has (a) contracted with anyone not to claim the right or privilege or, (b) without coercion and with knowledge of his right or privilege, made disclosure of any part of the privileged matter or consented to such a disclosure made by anyone.
A disclosure which is itself privileged or otherwise protected by the common law, statutes or rules of court of this State, or by lawful contract, shall not constitute a waiver under this section. The failure of a witness to claim a right or privilege with respect to one question shall not operate as a waiver with respect to any other question.
The rule speaks of waiver by contract and by disclosure. It does not purport to be exclusive or to list every way in which a privilege can be waived. Evid.R. 23(2) creates a privilege to make an evidentiary objection; it is not self-executing. If a defendant does not object to spousal testimony at trial at all, the defendant has surely waived the objection. It is the same if a defendant fails to move for severance and withholds the spousal privilege objection until a time when enforcement would entail violation of the basic rights of the spouse co-defendant or intolerable disruption of the criminal justice processes. Cf. State v. Walker, 80 N.J. 187, 403 A.2d 1 (1979).
We have so far covered Points I and II of defendant's counsel's brief. The remaining points are:
POINT III: THE TRIAL COURT JUDGE COMMITTED PREJUDICIAL ERROR IN REFUSING TO ENFORCE THE DEFENDANT'S DEMAND THAT THE STATE'S MAIN WITNESS, INVESTIGATOR MUCCIGROSSI, TESTIFY *655 AS TO THE IDENTITY OF ALLEGED INFORMER WHEREIN IT WAS TESTIFIED TO AT TRIAL THAT THE PERSON WAS NOT ACTING AS A CONFIDENTIAL INFORMER WHEN HE ENTERED THE DEFENDANT'S APARTMENT.
POINT IV: TRIAL COURT'S DENIAL OF DEFENDANT'S MOTION FOR A NEW TRIAL WAS AN ABUSE OF DISCRETION AND CONSTITUTES A MANIFEST DENIAL OF JUSTICE.
A. Defendant's withdrawal of his motion for a new trial was not knowingly or intelligently waived, therefore was not voluntarily, hence the trial court "sua sponte" should have granted the defendant's motion for a new trial.
POINT V: THE IMPOSITION OF A THIRTY-YEAR PRISON SENTENCE WAS MANIFESTLY EXCESSIVE AND SHOULD HAVE BEEN MODIFIED TO ALLEVIATE THE SENTENCE DISPARITY.
We have thoroughly considered these arguments and find them to be clearly without merit. R. 2:11-3(e)(2). Our disposition of the spousal testimony argument renders largely moot the Point IV question of the proper consequences of defendant's withdrawal and then reassertion of his motion for a new trial.
Defendant filed a pro se supplemental brief. In it he argued that the trial judge failed to charge the jury as to the limited use that could properly be made of the guilty plea of co-defendant Cuartas. No request was made for such a charge, and no objection was made to its omissions.
The instruction should have been given, even in the absence of a request, but we must determine if the error was harmless. R. 2:10-2; State v. Stefanelli, 78 N.J. 418, 434-435, 396 A.2d 1105 (1979). In our view, the State's case against defendant, including the undoubted presence of a kilogram of cocaine, 85% pure, in his bedroom closet, made conviction inevitable. The jury knew that the co-defendant Cuartas was independently active in the planned cocaine sale, and that his guilt alone did not necessarily implicate defendant. But, the physical circumstances corroborated Cuartas's detailed account of his own and defendant's criminal acts, and left little room for doubt of defendant's guilt. Beyond a reasonable doubt, the result would have been the same if the Stefanelli instruction had been given. In those circumstances, omitting the instruction was harmless error.
*656 Defendant also attacks the adequacy of his trial counsel. The criticism is that counsel failed to move for a severance, and failed to request an instruction limiting jury consideration of the Cuartas guilty plea. As to the second matter, it is plain for the stated reasons that counsel's error probably did not alter the result of the trial. Defendant's claim must therefore fail. State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987). With respect to non-assertion of the spousal privilege, defendant has not shown whether this was an unprofessional error or a failed strategy. However, he has had no opportunity to create a factual record. In those circumstances, we affirm on this point without prejudice to a post-conviction relief application making the claim. State v. Walker, 80 N.J. 187, 194, 403 A.2d 1 (1979).
Affirmed.
NOTES
[1] 5 N.J. 240, 74 A.2d 406 (1950), cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950).
[2] Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (separate trials are required where confession of one defendant cannot be effectively edited to avoid inculpating the other.