66 A.3d 177

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. YOLANDA TERRY AND TERON SAVOY,
DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 12, 2013—Decided May 14, 2013.

588 

Before Judges FISHER, WAUGH, and LEONE.

*Brian J. Di Stefano* argued the cause for appellant Teron Savoy.

*John L. Brown, Jr.,* argued the cause for appellant Yolanda Terry.

*William Kyle Meighan,* Assistant Prosecutor, argued the cause for respondent (*Marlene Lynch Ford,* Ocean County Prosecutor, attorney; *Samuel Marzarella,* Supervising Assistant Prosecutor, of counsel; *Mr. Meighan,* on the brief).

The opinion of the court was delivered by

LEONE, J.S.C. (temporarily assigned).

Defendants Teron Savoy and Yolanda Terry, who are husband and wife, appeal from the denial of their motion in limine to exclude cellphone calls and text messages between them that were intercepted by wiretaps. They argue that before the State could wiretap cellphones used by Savoy, it had to show a special need because he is married. We reject that argument. Defendants also argue that their communications were protected by the marital communications privilege. The State contended that (1) the interception removed the communications from protection of the marital communications privilege, and (2) the court should create a crime-fraud exception to that privilege. The trial judge accepted those contentions, and found the conversations not privileged. We cannot accept the State's first contention, however. At oral argument on appeal, the State withdrew the second contention because it now believes that such an exception can be created only by legislation or rule-making, not by judicial decision-making by this court.[1] We agree and reverse.

---

[1] The State has been represented in these proceedings by the Ocean County Prosecutor's Office. We invited the Attorney General's Office to appear as amicus curiae, but it declined.

I.

The State's brief in the trial court proffered the following alleged facts, which served as the basis for the judge's opinion.[2] Law enforcement authorities were investigating Savoy, who was the leader of a network distributing drugs in Ocean and Monmouth Counties. In that network, Savoy directed multiple individuals, including Terry. The State obtained judicial orders authorizing wiretaps on two cellphones used by Savoy beginning around October 7, 2010.

The State alleged that as part of his drug operation, Savoy fronted heroin to Chardel Holman. Savoy told Holman to meet Terry and pay her the drug proceeds Holman owed Savoy. On October 17, 2010, in several intercepted communications, Savoy arranged with Terry to pick up the money from Holman.

The State also alleged that on October 17, the authorities stopped a Lexus vehicle occupied by Savoy, seizing three bags of heroin, $900, and two other cellphones from Savoy's person. The authorities seized the Lexus after a police canine indicated that there were drugs in the car. Later that day, in an intercepted communication, Savoy asked Terry to retrieve unnamed items from his seized Lexus. The next day, after obtaining a warrant, officials searched the Lexus and recovered nearly twelve grams of heroin.

---

[2] The State's trial brief referenced a trial prosecutor's certification, which was to attach the wiretap affidavits and the transcripts of the pertinent intercepted communications, which are now included in the State's appellate appendix. Defendants have moved to strike those materials, alleging that they were not before the trial judge. The State now informs us that the prosecutor inadvertently failed to submit the certification to the trial court until months after the ruling which we now review. The State submits that the materials are unnecessary to resolve the issues before us. We agree, and grant defendants' motion to strike (M-3128-12). See State v. Golotta, 178 N.J. 205, 211-12, 837 A.2d 359 (2003) ("the State on appeal cannot rely on factual testimony or other proof that was not submitted as part of the lower court's record"); R. 2:5-4(a). While we do not rely on these stricken materials, we note only that the transcripts indicate that the State's trial brief accurately summarized the intercepted conversations, including that Savoy apparently enlisted Terry's aid in the commission of crimes.

## II.

The grand jury indicted Savoy, Terry, Holman, and twenty other persons. All defendants were charged with conspiracy to manufacture, possess with the intent to distribute, and distribute cocaine and heroin, *N.J.S.A.* 2C:5–2 and 2C:35–5a and –5b(1). Savoy was also charged with being a leader of a drug trafficking network, *N.J.S.A.* 2C:35–3, and possession of heroin with intent to distribute, *N.J.S.A.* 2C:35–5a(1) and –5b(3).

The State indicated its intent to offer as evidence two or three phone conversations and five text messages between Savoy and Terry. Savoy and Terry filed motions in limine to exclude them as privileged under the marital communications privilege, *N.J.R.E.* 509. The State's responsive brief pointed out the large number of courts which have adopted a crime-fraud exception to that privilege.

On July 31, 2012, the trial judge issued a reasoned oral opinion. First, the judge ruled that *Rule* 509 prevented only spouses from disclosing confidential communications, and that the wiretap officers who overheard the marital communications could testify to them. Second, the trial judge ruled that there was a crime-fraud exception to the marital communications privilege, "an issue of first impression in New Jersey."

Accordingly, the trial judge denied defendants' motion to exclude these communications as privileged. We granted defendant's motion for leave to appeal.

On appeal, defendants raise the following issues:

POINT [I]: DEFENDANTS['] MOTION TO EXCLUDE CONFIDENTIAL MARITAL COMMUNICATION SHOULD BE GRANTED SINCE THE STATE VIOLATED THE NEW JERSEY WIRETAP ACT WHEN IT RECORDED THE COMMUNICATIONS WITHOUT A SHOWING OF "SPECIAL NEEDS" AND FAILED TO INFORM THE WIRETAP JUDGE OF SUCH RECORDINGS.

POINT [II]: THE PRIVILEGED COMMUNICATIONS DO NOT LOSE [THEIR] PRIVILEGED CHARACTER BECAUSE THEY WERE OVERHEARD BY A THIRD PARTY.

POINT [III]: NEW JERSEY HAS NOT RECOGNIZED THE "CRIME FRAUD" EXCEPTION TO THE MARITAL PRIVILEGE NOR IS APPLICATION TO *N.J.R.E.* 504(c) [3] APPROPRIATE.

The issues raised on appeal are "legal in nature, and thus our review is plenary." *State v. Schubert,* 212 *N.J.* 295, 304, 53 *A.*3d 1210 (2012).

### III.

Defendants first argue that the State violated the New Jersey Wiretap and Electronic Surveillance Control Act (the Wiretap Act), *N.J.S.A.* 2A:156A–1 to –34. Specifically, defendants assert that *N.J.S.A.* 2A:156A–11 required the State to show "special need" to monitor Savoy's cellphones, because the State knew that Savoy was married to Terry, and learned that he used his cellphone to communicate with Terry.

■ Ordinarily, "we determine the meaning of statutes by looking to the Legislature's plain language." *State v. McDonald,* 211 *N.J.* 4, 18, 47 *A.*3d 669 (2012). *N.J.S.A.* 2A:156A–11 provides in pertinent part:

*If* the facilities from which, or *the place where, the wire, electronic or oral communications are to be intercepted* are being used, or are about to be used, or are leased to, listed in the name of, or commonly used by, a licensed physician, a licensed practicing psychologist, an attorney-at-law, a practicing clergyman, or a newspaperman, or *is a place used primarily for habitation by a husband and wife, no order shall be issued unless the court,* in addition to the matters provided in section 10 of *P.L.*1968, *c.* 409 (*C.*2A:156A–10), *determines that there is a special need to intercept wire, electronic or oral communications* over such facilities or *in such places. Special need as used in this section shall require* in addition to the matters required by section 10 of *P.L.*1968, *c.* 409 (*C.*2A:156A–10), *a showing that* the licensed physician, licensed practicing psychologist, attorney-at-law, practicing clergyman or newspaperman is personally engaging in or was engaged in over a period of time as a part of a continuing criminal activity or is committing, has or had committed or is about to commit an offense as provided in section 8 of *P.L.*1968, *c.* 409 (*C.*2A:156A–8) or that the public facilities or *the place used primarily for habitation by a husband and wife are being regularly used by someone who is personally engaging in or was engaged in over a period of time as*

---

[3] As there is no rule "504(c)," we read defendants' brief as referring to the crime-fraud exception to the attorney-client privilege, *N.J.S.A.* 2A:84A–20, *reprinted at N.J.R.E.* 504(2)(a).

*a part of a continuing criminal activity or is committing, has or had committed or is about to commit such an offense.* No otherwise privileged wire, electronic or oral communication intercepted in accordance with, or in violation of, the provisions of this act, shall lose its privileged character.

[*Ibid.* (emphasis added).]

Thus, under *N.J.S.A.* 2A:156A–11, if the communications are to be intercepted at "a place used primarily for habitation by a husband and wife," the State's application to intercept communications at that place must demonstrate "special need," namely that the place is "being regularly used by someone" personally engaged in crime. *Ibid.*

This language in *N.J.S.A.* 2A:156A–11 clearly requires that the State show a special need before using a "bug" or other electronic surveillance to intercept oral communications within a marital home. We note that it has been suggested in dicta that this language also encompasses interception of communications over a home phone of a married couple. *See State v. Catania,* 85 *N.J.* 418, 438, 427 *A.*2d 537 (1981); *Sacci v. Metaxas,* 355 *N.J.Super.* 499, 513, 810 *A.*2d 1119 (App.Div.2002).

Defendants try to stretch *N.J.S.A.* 2A:156A–11's plain language, "place used primarily for habitation by a husband and wife," beyond its generally accepted meaning to encompass cellphones wherever they may be located, if they are used by a married person. They argue that language should not be read to exclude cellphones because the Wiretap Act was written in 1968, before the advent of cellphones. To the contrary, "cellular telephone calls" that traveled in part over landlines were covered as "wire communications" under the 1968 federal wiretap act and thus under New Jersey's Wiretap Act, which was modeled on the federal wiretap act. *State v. Tango,* 287 *N.J.Super.* 416, 418–20, 671 *A.*2d 186 (App.Div.), *certif. denied,* 144 *N.J.* 585, 677 *A.*2d 758 (1996).

Because some cellphone calls travel purely by radio signals to other cellphones, Congress amended the federal wiretap act to cover them and other "electronic communications" in 1986, and the New Jersey Legislature did the same to the Wiretap Act in 1993.

*Ibid.; see L.* 1993, *c.* 29, §§ 1–24. In particular, that 1993 act amended *N.J.S.A.* 2A:156A–11 to cover "electronic communications," *L.* 1993, *c.* 29, § 10, but it did not amend the language requiring "special need" only for communications at "a place used primarily for habitation by a husband and wife," *N.J.S.A.* 2A:156A–11.[4] The Legislature's choice to leave that limitation unchanged, while amending the section to address cellphones, indicates its intent not to expand the special need requirement beyond the marital home. *See Johnson v. Scaccetti,* 192 *N.J.* 256, 277–78, 927 *A.*2d 1269 (2007) (the Legislature's amendment of other provisions in a statutory section indicates that its failure to override a judicial decision was probably purposeful). We see no basis to infer that the Legislature desired but failed to amend the "habitation" language. *See State v. Staten,* 62 *N.J.* 435, 438, 303 *A.*2d 65 (1973).

■ Furthermore, there are sound reasons supporting the Legislature's choice to confine the special needs requirement to the marital home. The marital home is the quintessential location for confidential communications between spouses, so protecting that "place" focuses the special need, and provides clear guidance to law enforcement. Extending the statute to refer to any communication facility used by a person who happens to be married would vastly expand the scope of the special need requirement, and present serious difficulties and uncertainties for law enforcement.[5]

---

[4] The Legislature has since repeatedly amended the Wiretap Act to accommodate new technology, including cellphones. *L.* 2009, *c.* 184, § 1 (eff. Jan. 12, 2010) (addressing the tracking of a "cellular telephone or wireless mobile device"); *L.* 2009, *c.* 142, § 1 (eff. Oct. 19, 2009); *L.* 1999, *c.* 151, § 6 (eff. June 30, 1999).

[5] We take judicial notice, *N.J.R.E.* 201(b)(3), that the United States Census Bureau indicates that there are approximately 3.3 million married people in New Jersey. *http://factfinder2.census.gov/faces/tableservices/jsf/pages/productview. xhtml?src=bkmk.* Further, officers applying for a wiretap may not know a person's marital status. We suspect that marital status is far less likely to be revealed by a person's cellphone listing than marital status by a home phone listing, or professional status by the business phone listing of the physicians,

We will not presume that the Legislature intended such a dramatic and problematic expansion "without further direction from the Legislature." *Staten, supra,* 62 *N.J.* at 438, 303 *A.2d* 65; *see State v. Haliski,* 140 *N.J.* 1, 9, 656 *A.2d* 1246 (1995) ("statutory interpretations that lead to absurd or unreasonable results are to be avoided").

■ For all these reasons, we reject defendants' argument. We hold that *N.J.S.A.* 2A:156A–11 does not require a showing of special need to wiretap a cellphone merely because it is registered to or used by a married person, even if the married person uses the cellphone to communicate with his or her spouse.[6]

Defendants cite a case suppressing monitored communications because the State improperly intercepted an attorney-client communication. *State v. Ates,* 426 *N.J.Super.* 614, 46 *A.3d* 605 (Law Div.2009), *aff'd o.b.,* 426 *N.J.Super.* 521, 534, 46 *A.3d* 550 (App.Div. 2012), *certif. granted,* 213 *N.J.* 389, 63 *A.3d* 228 (2013). In *Ates,* however, the wiretap order "clearly contained a restriction that 'no attorney client conversations may be intercepted,'" and the intercepted conversation was indisputably protected by the attorney-client privilege. *Id.* at 625–26. Defendants do not claim that the wiretap orders here contained a restriction forbidding the recording of marital communications, and the State disputes that the intercepted communications fall within the marital communications privilege.[7]

___

psychologists, attorneys, clergy members, or newspersons for whom special need must be shown under *N.J.S.A.* 2A:156A–11. Under defendants' argument, moreover, a special need would have to be shown for cellphones, regardless to whom they are listed, that are merely used by a married person.

[6] Accordingly, we need not reach the State's counter-argument that any special need requirement was met by the wiretap affidavits and transcripts, which in any event are not part of the appellate record.

[7] Defendants further criticize the State's minimization and recording procedures regarding their communications, and allege that the State marked their first call "privileged." However, no party introduced any evidence on what calls

Defendants also argue that allowing interception of privileged cellphone communications between spouses will chill marital communications, cause marital disharmony, and force spouses to testify. Those arguments all hinge on whether the communications were in fact protected by the marital communications privilege, the issue to which we now turn.

## IV.

The State first argues that the marital communications privilege does not apply to these communications because they were overheard by the wiretap, and will be testified to by an officer. We reject that argument.

The marital communications privilege was enacted in 1960 by the Legislature in *N.J.S.A.* 2A:84A–22, and is reprinted at *N.J.R.E.* 509. It provides in pertinent part:

> No person shall disclose any communication made in confidence between such person and his or her spouse unless both shall consent to the disclosure or unless the communication is relevant to an issue in an action between them or in a criminal action or proceeding in which either spouse consents to the disclosure, or in a criminal action or proceeding coming within *Rule* 23(2).
>
> [*Ibid.*] [8]

The marital communications privilege "stems from the strong public policy of encouraging free and uninhibited communication

---

were marked privileged, why calls were recorded, or what minimization procedures were employed. Also, the trial judge discussed none of those issues. We will not decide those fact-sensitive issues before "factual disputes have been resolved by the fact-finding body." *Garrow v. Elizabeth Gen. Hosp. & Dispensary*, 79 *N.J.* 549, 560, 401 A.2d 533 (1979).

[8] *Rule* 23(2) of the 1967 Rules of Evidence reprinted the spousal testimonial privilege codified by *N.J.S.A.* 2A:84A–17(2), which is now reprinted at *N.J.R.E.* 501(2): "The spouse or one partner in a civil union couple of the accused in a criminal action shall not testify in such action except to prove the fact of marriage or civil union unless (a) such spouse or partner consents, or (b) the accused is charged with an offense against the spouse or partner, a child of the accused or of the spouse or partner, or a child to whom the accused or the spouse or partner stands in the place of a parent, or (c) such spouse or partner is the complainant."

between spouses, and, consequently, of protecting the sanctity and tranquility of marriage." *State v. Szemple*, 135 *N.J.* 406, 414, 640 A.2d 817 (1994).

In contexts outside the Wiretap Act, a marital communication loses its privilege if it is overheard " 'either accidentally or by eavesdropping.' " *Id.* at 415, 640 A.2d 817 (quoting 1 *McCormick on Evidence*, § 82, at 302–03 (J.S. Strong, 4th ed.1992)); *see id.* at 418–20, 640 A.2d 817. "New Jersey law has long held that the marital-communications privilege does not prohibit disclosure by third parties who overhear spousal conversations." *Id.* at 416, 640 A.2d 817. In *Szemple*, the Supreme Court reviewed several New Jersey cases, including cases where the spouses spoke in the presence of a neighbor, or where a spouse transmitted the communication to the other spouse through a third person. *Id.* at 416–17, 640 A.2d 817. "Those cases establish that the involvement of a third party vitiates the requirement of confidentiality." *Id.* at 417, 640 A.2d 817. Accordingly, the Court in *Szemple* held that "[t]he confidential nature of a letter is destroyed just as readily when a third party obtains it as when someone overhears an oral communication." *Ibid.*

No New Jersey case, however, has held that interception under the Wiretap Act destroys the marital communications privilege. The State and the trial judge cite *State v. Sidoti*, 134 *N.J.Super.* 426, 341 A.2d 670 (App.Div.1975), as holding that interception under the Wiretap Act removes the privilege. We do not read *Sidoti* as reaching that holding. The premise of *Sidoti's* discussion was that the defendant was "conceding that the conversations [with his wife] thus admitted into evidence did not contain confidential communications," and *Sidoti* assumed that the marital communications privilege was "not applicable here, for defendant concedes the taped conversations were not confidential." *Id.* at 430–31, 341 A.2d 670. Further, *Sidoti* concluded that "the admission of these conversations, even if error, was harmless beyond a reasonable doubt." *Id.* at 431, 341 A.2d 670. Finally, no court has

ever cited *Sidoti* as holding that interception under the Wiretap Act removes the privilege.[9]

Even if *Sidoti* had held that interception under the Wiretap Act removes the privileged character of marital communications, we would decline to follow it because the Wiretap Act mandates the exact opposite ruling. The same section that protects communications in the marital home also provides: "No otherwise privileged wire, electronic or oral communication intercepted in accordance with, or in violation of, the provisions of this act, shall lose its privileged character." *N.J.S.A.* 2A:156A–11. The State's argument, that interception by wiretap destroys confidentiality, would remove the privilege from all of the privileged communications protected by *N.J.S.A.* 2A:156A–11, because all depend on confidentiality.[10] The State's reading would thus render this key provision of *N.J.S.A.* 2A:156A–11 a nullity. *See Smith v. Director, Div. of Taxation,* 108 *N.J.* 19, 27, 527 *A.2d* 843 (1987) ("it is well-established that a statute should not be construed in a manner that renders any portion of it a nullity").

■ Even if *N.J.S.A.* 2A:156A–11's language were ambiguous, the legislative history is inconsistent with the State's reading. *See McDonald, supra,* 211 *N.J.* at 18, 47 *A.3d* 669. The Legislature copied this provision directly from the essentially identical provision in the federal wiretap act, 18 *U.S.C.A.* § 2517(4). The legislative history of § 2517(4) explained:

---

[9] For example, *Szemple* cites *Sidoti* only for the generic proposition that "the marital-communications privilege [is] inapplicable to a communication between a husband and a wife because a third person had overheard it." *Szemple, supra,* 135 *N.J.* at 417, 640 *A.2d* 817.

[10] *In re Venezia,* 191 *N.J.* 259, 271, 922 *A.2d* 1263 (2007) (newsperson's privilege); *State v. Loponio,* 85 *N.J.L.* 357, 360, 88 *A.* 1045 (E. & A.1913) (attorney-client privilege); *State v. Smith,* 307 *N.J.Super.* 1, 11–14, 704 *A.2d* 73 (App.Div.1997) (physician-patient privilege and psychologist-patient privilege), *certif. denied,* 153 *N.J.* 216, 708 *A.2d* 67 (1998); *State v. List,* 270 *N.J.Super.* 169, 174–75, 636 *A.2d* 1054 (App.Div.) (cleric-penitent privilege), *certif. denied,* 134 *N.J.* 486, 634 *A.2d* 532 (1993).

Traditionally, the interest of truth in the administration of justice has been subordinated in the law to the interest of preserving privileged communications where four relationships have been involved: physician-patient, lawyer-client, clergyman-confidant, and husband-wife. The scope and existence of these privileges varies from jurisdiction to jurisdiction. The proposed provision is intended to vary existing law only to the extent it provides that an otherwise privileged communication does not lose its privileged character because it is intercepted by a stranger.

[S. Rep. No. 90–1097, at 100 (1968), *reprinted in* 1968 *U.S.C.C.A.N.* 2112, 2189.]

Thus, this provision in both the federal and New Jersey wiretap acts was intended to defeat precisely the argument the State makes here, that interception by wiretap eliminates confidentiality and destroys the privilege. *See State v. Burstein,* 85 *N.J.* 394, 412, 427 *A.*2d 525 (1981) (relying on the legislative history of the federal wiretap act to determine the meaning of a "virtually identical" provision in New Jersey's Wiretap Act).

Because interception does not cause the marital communications to lose their privileged character, we must also reject the State's subsidiary argument, adopted by the trial judge, that the privilege is not violated because the intercepted communications will be testified to by an officer, rather than Savoy or Terry. The State conflates the marital communications privilege in *Rule* 509 with the privilege against spousal testimony, *N.J.R.E.* 501(2). *Rule* 509 provides independent protections to confidential communications which do not vanish merely because there is no violation of *Rule* 501(2). *State v. Mauti,* 208 *N.J.* 519, 533–34, 33 *A.*3d 1216 (2012); *State v. Ospina,* 239 *N.J.Super.* 645, 651, 571 *A.*2d 1373 (App.Div.), *certif. denied,* 127 *N.J.* 321, 604 *A.*2d 597 (1990); *see, e.g., Szemple, supra,* 135 *N.J.* at 410–12, 414–20, 640 *A.*2d 817 (considering *Rule* 509's protections for a marital communication even though it was admitted without spousal testimony).[11] In any event, we cannot

---

[11] The State and trial judge note that *Rule* 509 is phrased to prohibit a spouse from disclosing a communication. *N.J.R.E.* 509 ("No person shall disclose any communication made in confidence between such person and his or her spouse ..."). That does not mean that a third party is necessarily free to disclose a still-privileged communication. *See Szemple, supra,* 135 *N.J.* at 419, 640 *A.*2d 817 (a

reconcile the State's argument—that intercepting and having an officer testify to a marital communication defeats the privilege—with the Wiretap Act's explicit provision that "[n]o otherwise privileged communication" intercepted under the Act "shall lose its privileged character." *N.J.S.A.* 2A:156A–11; *see State v. Mazzone,* 336 *Md.* 379, 648 *A.2d* 978, 983 (1994) (an officer's testimony to intercepted marital communications violates the essentially identical provision of Maryland's wiretap statute, *Md.Code Ann.* § 10–407(d)).

■ We hold that under *N.J.S.A.* 2A:156A–11, a privileged marital communication does not lose its privileged character because it is intercepted by a wiretap, or because the intercepted communication can be testified to by a third person. The issue then is whether these marital communications fall within a crime-fraud exception to the marital communications privilege. *See United States v. Kahn,* 471 *F.*2d 191, 193–95 & n. 8 (7th Cir.1972) (rejecting the defendant's reliance on 18 *U.S.C.A.* § 2517(4) because the court found a crime-fraud exception to the federal marital communications privilege).[12]

## V.

The State's second argument was that the intercepted communications do not fall within the marital communications privilege because they were made in aid of the commission of a crime. The State argued and the trial judge ruled that the crime-fraud exception, long applied to the attorney-client privilege, *see N.J.R.E.* 504(2)(a), also applies to the marital communications

---

third party may not disclose a communication obtained with the consent, connivance, or collusion of a spouse).

[12] The United States Supreme Court denied certiorari on the marital privilege issue, *Kahn v. United States,* 411 *U.S.* 986, 93 *S.Ct.* 2271, 36 *L.Ed.*2d 964 (1973), and, addressing other issues, reversed the suppression of the wife's conversations. *United States v. Kahn,* 415 *U.S.* 143, 148–50 & nn. 5 & 7, 158, 94 *S.Ct.* 977, 981 & nn. 5 & 7, 985, 39 *L.Ed.*2d 225, 232–34 & nn. 5 & 7, 238 (1974).

privilege.[13] The judge correctly recognized that this presents an issue of first impression in New Jersey. Accordingly, we look at the origins of the exception.

The crime-fraud exception to the attorney-client privilege was recognized in New Jersey common law in the case that first acknowledged the privilege itself. *Matthews v. Hoagland*, 48 *N.J. Eq.* 455, 465–70, 21 *A.* 1054 (Ch. 1891). The initial justification for the crime-fraud exception was that the client's concealed or open involvement of counsel in crime destroyed the "professional confidence and professional employment," respectively, that were the prerequisites for the privilege. *Ibid.; accord In re Stein*, 1 *N.J.* 228, 236, 62 *A.*2d 801 (1949).

Subsequently, the justification was refocused on "sound considerations of public policy." *In re Selser*, 15 *N.J.* 393, 403, 105 *A.*2d 395 (1954). In *Selser*, the Supreme Court recognized that "the privilege is not absolute, but rather an exception to a more fundamental policy," namely "the full disclosure of all the facts in order that justice may prevail." *Id.* at 405, 105 *A.*2d 395. "It is therefore to be strictly limited to the purposes for which it exists." *Ibid.* " 'A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told.' " *Id.* at 402, 105 *A.*2d 395 (quoting *Clark v. United States*, 289 *U.S.* 1, 15, 53 *S.Ct.* 465, 469, 77 *L.Ed.* 993, 1000 (1933)). The Court emphasized that given the increasing inroads of crime, the exception was necessary to avoid "obvious detriment [to] the public welfare." *Id.* at 403, 412, 105 *A.*2d 395. Thus, "[t]he 'crime or fraud' exception to the privilege represents a statutory recognition of a situation in which the purpose of the privilege would not be served by its enforcement," *Fellerman v. Bradley*, 99 *N.J.* 493, 503, 493 *A.*2d 1239 (1985), and

---

[13] As noted above, at oral argument the State informed us that it no longer believed that this court could create a crime-fraud exception to the marital communications privilege, and that the State was withdrawing that argument. The trial judge accepted that argument, however, and we cannot resolve defendants' appeal from her order without determining whether her ruling is correct.

is necessary to protect "[t]he fair administration of justice and the interests of the public," *In re Richardson,* 31 *N.J.* 391, 401, 157 *A.*2d 695 (1960).

■ Those same public policy concerns support applying the crime-fraud exception to the marital communications privilege. " '[S]ince the [marital communications] privilege has as its only effect the suppression of relevant evidence, its scope should be confined as narrowly as is consistent with the reasonable protection of marital communications.' " *Szemple, supra,* 135 *N.J.* at 415, 640 *A.*2d 817 (quoting 1 *McCormick on Evidence, supra,* § 82, at 303). Further, it is not uncommon for spouses to be accomplices or co-conspirators, or for one spouse to use the other spouse to carry out a crime or fraud. To immunize spouse-to-spouse communications about committing ongoing crimes and frauds from interception, or admission into evidence, would encourage such spousal involvement, thwart law enforcement, and increase the risk to the public.[14]

Numerous other jurisdictions, citing similar public policy concerns, have made the marital communications privilege subject to the crime-fraud exception. In *United States v. Kahn,* a wiretap intercepted the defendant calling his wife about his ongoing illegal gambling activities, and the wife calling a gambling figure. The Seventh Circuit held that "[i]f the intercepted conversations had to

---

[14] To do so would also open the marital communication privilege to criticism similar to the attacks long directed at the spousal testimonial privilege. *See Trammel v. United States,* 445 *U.S.* 40, 51–52, 100 *S.Ct.* 906, 913, 63 *L.Ed.*2d 186, 196 (1980) (it " 'secures, to every man, one safe and unquestionable and ever ready accomplice for every imaginable crime' " (quoting J. Bentham, 5 *Rationale of Judicial Evidence* 340 (1827))); *State v. Baluch,* 341 *N.J.Super.* 141, 177, 775 *A.*2d 127 (App.Div.) (" 'a procedural rule intended solely to promote marital harmony [would] become[ ], if not a suit of armor against the weapons of truth ascertainment in a criminal prosecution, at least a bullet-proof vest' " (quoting *State v. Infinito,* 180 *N.J.Super.* 75, 77, 433 *A.*2d 816 (App.Div.), *certif. denied,* 88 *N.J.* 505, 443 *A.*2d 717 (1981), *certif. denied,* 170 *N.J.* 89, 784 *A.*2d 721 (2001)); *Ospina, supra,* 239 *N.J.Super.* at 651, 571 *A.*2d 1373 ("One might also wonder what interest society has in protecting the harmony of marital bonds forged in shared criminality.").

do with the commission of a crime," the marital communications privilege "must give way to the public interest in discovering the truth about crime, and in enforcement of criminal law." *Kahn, supra,* 471 *F.*2d at 194. The Third Circuit has agreed that "communications between spouses pertaining to ongoing or future criminal activity, are not protected against disclosure by the privilege for confidential marital communications." *United States v. Ammar,* 714 *F.*2d 238, 257–58 (3d Cir.) (the defendant's request to his wife to collect money owed him from heroin transactions is not privileged because "such communications are not worthy of protection"), *cert. denied,* 464 *U.S.* 936, 104 *S.Ct.* 344, 78 *L.Ed.*2d 311 (1983); *see United States v. King,* 541 *F.*3d 1143, 1146 (5th Cir.2008) (intercepted communications regarding hiding items from law enforcement are not privileged), *cert. denied,* 555 *U.S.* 1119, 129 *S.Ct.* 947, 173 *L.Ed.*2d 144 (2009).

Indeed, all eleven federal circuits that have faced the issue have concluded that communications between spouses jointly engaging in criminal activity are excluded from the marital communications privilege.[15] Numerous states have reached the same conclusion by statute,[16] rule,[17] or case law.[18]

---

[15] *E.g., United States v. Evans,* 966 *F.*2d 398, 401–02 (8th Cir.), *cert. denied,* 506 *U.S.* 988, 113 *S.Ct.* 502, 121 *L.Ed.*2d 438 (1992); *United States v. Marashi,* 913 *F.*2d 724, 730–31 (9th Cir.1990); *United States v. Malekzadeh,* 855 *F.*2d 1492, 1496 (11th Cir.1988); *United States v. Estes,* 793 *F.*2d 465, 467–468 (2d Cir. 1986); *United States v. Picciandra,* 788 *F.*2d 39, 43 (1st Cir.), *cert. denied,* 479 *U.S.* 847, 107 *S.Ct.* 166, 93 *L.Ed.*2d 104 (1986); *United States v. Sims,* 755 *F.*2d 1239, 1243 (6th Cir.1985), *cert. denied,* 473 *U.S.* 907, 105 *S.Ct.* 3533, 87 *L.Ed.*2d 656 (1985); *United States v. Neal,* 743 *F.*2d 1441, 1446–47 (10th Cir.1984), *cert. denied,* 470 *U.S.* 1086, 105 *S.Ct.* 1848, 85 *L.Ed.*2d 146 (1985); *United States v. Broome,* 732 *F.*2d 363, 365 (4th Cir.), *cert. denied,* 469 *U.S.* 855, 105 *S.Ct.* 181, 83 *L.Ed.*2d 116 (1984); *United States v. Mendoza,* 574 *F.*2d 1373, 1379–81 (5th Cir.), *cert. denied,* 439 *U.S.* 988, 99 *S.Ct.* 584, 58 *L.Ed.*2d 661 (1978). In the D.C. Circuit, the district court has reached the same conclusion. *United States v. Cooper,* 85 *F.Supp.*2d 1, 31–32 (D.D.C.2000).

[16] *Cal. Evid.Code* § 981; *Colo.Rev.Stat.* § 13–90–107(1)(a)(III); 725 *Ill. Comp. Stat. Ann.* 5/115–16 (West 2008); *Kan. Stat. Ann.* § 60–428(b)(5); *Wis. Stat.* § 905.05; *D.C.Code* § 14–306(b–1)(3).

Thus, as the trial judge observed, "numerous State and Federal jurisdictions ... hold that there is a crime-fraud exception to the marital communication privilege." As the judge noted, moreover, New Jersey's attorney-client privilege contains a specific crime-fraud exception.[19] Before we can decide whether to follow those jurisdictions and adopt such an exception to the marital communications privilege, we must first determine whether we have the authority to add an exception to a privilege adopted by statute.[20]

---

[17] *Alaska R. Evid.* 505(b)(2)(B); *Ky. R. Evid.* 504(c)(1); *Tex.R. Evid.* 504(a)(4)(A); *Utah R. Evid.* 502(e)(2).

[18] *State v. Browder,* 486 So.2d 504, 507 (Ala.Cr.App.1986); *Gill v. Commonwealth,* 374 S.W.2d 848, 851 (Ky.Ct.App.1964); *State v. Smith,* 384 A.2d 687, 693–94 (Me.1978); *State v. Heistand,* 708 S.W.2d 125, 126 (Mo.1986); *People v. Watkins,* 63 A.D.2d 1033, 406 N.Y.S.2d 343, 345 (1978), *leave denied,* 45 N.Y.2d 785, 409 N.Y.S.2d 1043, 381 N.E.2d 178, *cert. denied,* 439 U.S. 984, 99 S.Ct. 575, 58 L.Ed.2d 656 (1978); *State v. Witchey,* 388 N.W.2d 893, 895–96 (S.D.1986); *State v. Hurley,* 876 S.W.2d 57, 63–64 (Tenn.1993); *see Kine v. Forman,* 205 Pa.Super. 305, 209 A.2d 1, 3 (1965); *Goforth v. State,* 100 Tex.Crim. 442, 273 S.W. 845, 846 (Tex.Crim.App.1925); *Stumpf v. Commonwealth,* 8 Va.App. 200, 379 S.E.2d 480, 483–84 (1989).

[19] Indeed, the rules of evidence contain crime-fraud and similar exceptions to numerous communication-based privileges. *N.J.R.E.* 506(f) (no physician-patient privilege if "the services of the physician were sought or obtained to enable or aid anyone to commit or to plan to commit a crime or a tort, or to escape detection or apprehension after the commission of a crime or a tort"); *N.J.R.E.* 511(2) (allowing a cleric to waive the cleric-penitent privilege if "the privileged communication pertains to a future [planned] criminal act"); *N.J.R.E.* 514 (no trade secret privilege unless "the judge finds that the allowance of the privilege will not tend to conceal fraud or otherwise work injustice"); *N.J.R.E.* 518 (social worker may disclose privileged information if it "presents a clear and present danger to the health or safety of an individual"); *N.J.R.E.* 519(b) (no mediation privilege if a person "intentionally uses a mediation to plan, attempt to commit or commit a crime, or to conceal an ongoing crime or ongoing criminal activity"). Furthermore, the privilege for psychologist-patient communications provides that they "are placed on the same basis as those provided between attorney and client," *N.J.R.E.* 505, thus incorporating "an exception analogous to the 'crime or fraud' exception to the attorney-client privilege," *Kinsella v. Kinsella,* 150 N.J. 276, 302, 696 A.2d 556 (1997).

[20] Indeed, the courts that have rejected the crime-fraud exception have largely done so because they could not add an exception not found in their statutes.

## VI.

To determine whether this court can adopt a crime-fraud exception to the marital communication privilege, we must first briefly examine the history and promulgation of privileges and rules of evidence in New Jersey. Prior to the Evidence Act of 1960, *N.J.S.A.* 2A:84A–1 to –49, the attorney-client privilege, like its crime-fraud exception, had "never been formally set forth in either constitutional or statutory provision." *Richardson, supra,* 31 *N.J.* at 396, 157 *A.*2d 695.

"Before passage of the Evidence Act, the various branches of government made competing constitutional claims as to which branch had authority to enact and regulate evidence rules." *State v. Byrd,* 198 *N.J.* 319, 343, 967 *A.*2d 285 (2009). The New Jersey Constitution provides that "[t]he Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts," *N.J. Const.* art. VI, § 2, ¶ 3, but the drafters deleted earlier drafts' references to rules of evidence because "the delegates to the 1947 Constitutional Convention were either unable or unwilling to classify rules of evidence as either procedural rules or substantive law," *Byrd, supra,* 198 *N.J.* at 344, 967 *A.*2d 285; *see Winberry v. Salisbury,* 5 *N.J.* 240, 247–48, 255, 74 *A.*2d 406, *cert. denied,* 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L.Ed.* 638 (1950) (the Supreme Court's power to promulgate rules "is confined to practice, procedure and administration," and does not include "substantive law"). Apparently for that reason, the drafters "decided not to resolve the thorny question concerning whether the Supreme Court had exclusive rule-making power to enact evidence rules." *Byrd, supra,* 198 *N.J.* at 345, 967 *A.*2d 285. "The Evidence Act was a 'pragmatic resolution' among the three branches of government, giving each branch a role in the process of enacting rules of evidence,"

---

*Smith v. State,* 344 *So.*2d 915, 919 n. 2 (Fla.Dist.Ct.App.), *cert. denied,* 353 *So.*2d 679 (Fla.1977); *People v. Krankel,* 105 *Ill.App.*3d 988, 61 *Ill.Dec.* 565, 434 *N.E.*2d 1162, 1164 (1982); *Coleman v. State,* 281 *Md.* 538, 380 *A.*2d 49, 54–55 (1977); *State v. Gianakos,* 644 *N.W.*2d 409, 420 (Minn.2002).

and "averting a conflict with the other branches of government." *Ibid.* (citations omitted).

In 1960, "New Jersey's statutory law governing testimonial privileges was adopted as part of" the Evidence Act. *N.J.R.E.* 500 (historical note). Under the Evidence Act, the privileges were "codified as part of *N.J.S.A.* 2A:84A," *N.J.R.E.* 500 (committee comment), including the spousal testimonial privilege, *N.J.S.A.* 2A:84A–17(2), the attorney-client privilege, *N.J.S.A.* 2A:84A–20, and the marital communications privilege, *N.J.S.A.* 2A:84A–22. The Evidence Act expressly included the crime-fraud exception in the attorney-client privilege:

> (2) Exceptions. Such privilege shall not extend (a) to a communication in the course of legal service sought or obtained in aid of the commission of a crime or a fraud. . . .
>
> [*N.J.S.A.* 2A:84A–20(2)(a).]

The Evidence Act did not include any such exception in the newly-enacted marital communication privilege. *N.J.S.A.* 2A:84A–22.

The Evidence Act also provided that "[t]he Supreme Court may adopt rules dealing with the admission or rejection of evidence, in accordance with the procedures set forth in this article." *N.J.S.A.* 2A:84A–33. The Act permitted the Supreme Court to promulgate evidence rules, including rules revising or eliminating statutory evidence provisions, with notice to the Legislature and Governor, and subject to cancellation by a joint resolution of the Senate and General Assembly signed by the Governor. *N.J.S.A.* 2A:84A–33 to –40. The Legislature also reserved its right to pass statutes changing or cancelling any such evidence rules. *N.J.S.A.* 2A:84A–37.[21]

In 1967, the Supreme Court's first "rules of evidence were adopted cooperatively by the three branches of government under the Evidence Act." *Busik v. Levine,* 63 *N.J.* 351, 367–68, 307 *A.2d*

---

21 For example, the Legislature in 1992 passed a statute "substantially" limiting the marital-communications privilege, even though it was then *Rule* 28 of the 1967 Rules of Evidence. *Szemple, supra,* 135 *N.J.* at 409 & n. 1, 414, 640 A.2d 817; *L.* 1992, *c.* 142, § 2 (eff. Nov. 17, 1992).

571 (1973). "Under the statutory arrangement, some of the rules, notably those embodying privileges, were fixed in the statute itself while other rules, prepared by the Court after consideration at a Judicial Conference, were filed with the Legislature to become effective unless disapproved by a joint resolution signed by the Governor." *Id.* at 368, 307 *A.*2d 571.

The Supreme Court utilized the same Evidence Act procedure to adopt the current 1993 Rules of Evidence, *N.J.R.E.* 101 to 1103. *Byrd, supra,* 198 *N.J.* at 343, 967 *A.*2d 285. "The revised rules adopted the numbering used in the Federal Rules of Evidence and followed those rules in many instances." *State v. Harris,* 209 *N.J.* 431, 442, 38 *A.*3d 559 (2012). The Court's rules did not follow Federal Rule of Evidence 501, which left "the law of privilege to common-law development superseded only by the Constitution, Act of Congress, or Supreme Court rule." *N.J.R.E.* 500 (committee comment). Instead, the Court simply adopted as rules the statutory privileges that already existed:

Privileges as they now exist or may be modified by law shall be unaffected by the adoption of these rules. For convenience in reference certain existing provisions of law relating to privileges are enumerated in Article V [the "Privileges" Article]. [*N.J.R.E.* 500.]

The Court's rules merely reprinted and "assign[ed] a rule number to each of the statutory privileges, making no change in their present text." *N.J.R.E.* 500 (committee comment). Thus, as set forth above, *N.J.R.E.* 509 reprinted the marital privilege for confidential communications statute, *N.J.S.A.* 2A:84A-22.

In *Byrd,* the State requested that the Supreme Court issue a judicial opinion adopting a forfeiture-by-wrongdoing exception to the Rules of Evidence. *Byrd, supra,* 198 *N.J.* at 334, 342, 967 *A.*2d 285.[22] The Court concluded: "Although we believe that the addition of a forfeiture-by-wrongdoing hearsay exception to our

---

[22] The forfeiture-by-wrongdoing exception to the hearsay rule would "allow the admission of a witness's statement offered against a party who has engaged, directly or indirectly, in wrongdoing that was intended to, and did, procure the unavailability of the witness." *Id.* at 324, 967 *A.*2d 285.

evidence rules would be a positive development and promote the ascertainment of truth, we cannot accept the State's argument that this Court should act unilaterally and bypass the procedures of the Evidence Act." *Id.* at 348, 967 *A.2d* 285. The Court emphasized that "[i]n New Jersey, the adoption of evidence rules is governed by statute—the Evidence Act, 1960, *N.J.S.A.* 2A:84A–33 to –44—and the process of adopting such rules involves all three branches of government." *Id.* at 342, 967 *A.2d* 285. The Court "adhere[d] to the procedural requirements of the Evidence Act," and announced it would "submit the proposed rule to the Senate and the General Assembly for their approval by resolution, and to the Governor for his signature." *Id.* at 349, 967 *A.2d* 285 (citing *N.J.S.A.* 2A:84A–38).[23]

In *Mauti*, the Supreme Court emphasized the limited ability of judicial opinions to amend the statutory privileges. The State asked the Court to compel a wife's testimony against her husband, despite the statutory spousal testimonial privilege, because before marriage she had done her own investigation of his alleged sexual assault against her sister, and had testified before the grand jury. The State argued that permitting the wife to exercise the spousal testimonial privilege did nothing to further the purpose behind the privilege. The Court stressed that "[t]he Legislature has spoken regarding the spousal privilege and, in so doing, has set forth the three specific circumstances in which it has concluded that application of the privilege would not advance the goals underlying it." *Mauti, supra,* 208 *N.J.* at 540–41, 33 *A.3d* 1216 (citing *N.J.S.A.* 2A:84A–17(2)). "There is neither warrant nor right for us to engraft a new exception onto the privilege." *Id.* at 541, 33 *A.3d* 1216. "Our own conclusions about what would be better policy are simply of no consequence." *Ibid.*[24]

---

23 The Court promulgated a forfeiture-by-wrongdoing rule, which was adopted pursuant to the Evidence Act. *N.J.R.E.* 804(b)(9).

24 The Court distinguished the circumstances "(1) where a constitutional right is at stake, or (2) a party has explicitly or implicitly waived the privilege. It is

We have expressed similar concerns about judicially modifying the statutory privileges. In *Ospina*, we noted that the federal courts had adopted a " 'joint participants' " exception to the spousal testimonial privilege. *Ospina, supra*, 239 *N.J.Super.* at 650, 571 *A.*2d 1373 (citation omitted). However, we stated that, because New Jersey's privilege "was statutorily adopted in *N.J.S.A.* 2A:84A–17, we are reluctant to create the *Winberry v. Salisbury* confrontation that would be necessarily involved in judicial renovation of the privilege." *Ospina, supra*, 239 *N.J.Super.* at 650, 571 *A.*2d 1373 (footnote omitted). We concluded that "[w]e have no authority to narrow the ... privilege." *Id.* at 651, 571 *A.*2d 1373. Similarly, in *State v. Baluch*, 341 *N.J.Super.* 141, 172, 775 *A.*2d 127 (App.Div.), *certif. denied*, 170 *N.J.* 89, 784 *A.*2d 721 (2001), we were "mindful of our inability to unilaterally narrow the [spousal testimonial] privilege by judicial fiat." In *State v. Mauti*, 416 *N.J.Super.* 178, 191, 193 & n. 7, 3 *A.*3d 624 (App.Div.2010), *aff'd*, 208 *N.J.* 519, 33 *A.*3d 1216 (2012), we stressed that even though the spousal testimonial privilege had been criticized, and abandoned by nineteen states, "[o]ur role as judges is not to question the wisdom of this public policy" behind all privileges, but "to ascertain and then enforce the intent of the Legislature."

The trial judge, citing *Ospina*, noted that "unlike federal law, the privileges in New Jersey are statutorily created and, therefore, should not be judicially modified." Nonetheless, the judge distinguished the spousal testimonial privilege at issue in *Ospina* from the marital communication privilege, which "is akin to the attorney/client privilege." The judge reasoned that since the attorney-client privilege has a crime-fraud exception, *N.J.R.E.* 504(2)(a), and courts in other jurisdictions had applied that exception to the marital communications privilege, the same exception should apply to New Jersey's *Rule* 509.

---

only such circumstances that permit judicial intervention." *Id.* at 538–39, 541, 967 *A.*2d 285.

■ We must disagree with the trial judge's reasoning. The fact that the spousal testimonial privilege was at issue in *Ospina, Baluch,* and *Mauti* does not mean that we are free to create exceptions to other privileges. The fact that the Legislature codified a crime-fraud exception to the attorney-client privilege does not mean that we can add that exception to the marital communications privilege because the privileges are "akin". *See Mauti, supra,* 416 *N.J.Super.* at 193, 3 *A.*3d 624. Rather, under the Supreme Court's decisions in *Byrd* and *Mauti,* we may not engraft a crime-fraud exception onto the marital communications privilege.

The trial judge added that "any communication in the case made in furtherance of drug trafficking was [not] worthy of protection, nor does it fall within the public policy principles underlying the marital [communication] privilege in New Jersey." We agree, but "[o]ur own conclusions about what would be better policy are simply of no consequence." *See Mauti, supra,* 208 *N.J.* at 541, 33 *A.*3d 1216. There were similarly compelling reasons to adopt the forfeiture-by-wrongdoing exception in *Byrd. Byrd, supra,* 198 *N.J.* at 337–38, 967 *A.*2d 285. Nevertheless, as in *Byrd,* this court cannot "act unilaterally and bypass the procedures of the Evidence Act." *See id.* at 348, 967 *A.*2d 285.

Accordingly, under *Byrd* and *Mauti,* we hold that neither this court nor the trial judge has the power to add the crime-fraud exception to the marital communication privilege. Therefore, we reverse the trial judge's order denying the motion to exclude the intercepted privileged communications between Savoy and Terry.

Reversed and remanded.